**Edith BUHRLE, Appellant (Defendant below),**

v.

**STATE of Wyoming, Appellee (Plaintiff below).**

No. 5425.

Supreme Court of Wyoming.

May 13, 1981.

Rehearing Denied May 29, 1981.

Harry G. Bondi, Asst. Public Defender, Wyoming Public Defender Program, and Philip S. Bovee, Casper, signed the brief and appeared in oral argument for appellant.

\* District Judge at time of oral argument. Justice of this court, effective March 26, 1981.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division, and John W. Renneisen, Asst. Atty. Gen., Cheyenne, signed the brief of appellee. Renneisen and Burton W. Gutz, County Atty., Natrona County, appeared in oral argument for appellee.

Before ROSE, C. J., RAPER, THOMAS and ROONEY, JJ., and BROWN,\* District Judge.

BROWN, Justice.

Defendant-appellant was convicted by a jury of murder in the second degree, in the Seventh Judicial District, in and for Natrona County, Wyoming. The following issues have been raised by defendant on appeal:

1. WAS IT REVERSIBLE ERROR FOR THE TRIAL COURT TO EXCLUDE THE TESTIMONY OF THE DEFENSE PSYCHOLOGIST?

2. WAS IT REVERSIBLE ERROR FOR THE TRIAL COURT TO LIMIT APPELLANT'S CROSS–EXAMINATION OF A PROSECUTION WITNESS?

3. WAS IT PREJUDICIAL FOR THE TRIAL COURT TO LIMIT THE TESTIMONY OF A DEFENSE WITNESS?

We find that the trial judge did not commit reversible error and, therefore, we affirm.

Kenneth Buhrle, the victim, and appellant had been married eighteen years at the time of Mr. Buhrle's death. During this time appellant suffered numerous instances of physical and mental abuse. On September 24, 1979, Mr. Buhrle had his lawyer draw up papers to institute a divorce action, and he also executed an affidavit in order to obtain a restraining order against his wife. The next day Mr. Buhrle and appellant got into an argument and during the altercation appellant threatened her husband with a shovel. Mr. Buhrle responded by beating his wife about the head, neck and shoulders with a pair of work boots. The following day Mr. Buhrle moved out of the family home and into the Bel Air Motel.

Appellant testified that her husband returned to the family home in the late afternoon of October 2, 1979, and requested that appellant drive out to the motel where he was staying so they could talk. When appellant arrived at the motel she had a hunting rifle and a pair of rubber gloves in her possession. Mr. Buhrle kept the night chain on the door of his motel room the entire time that the two talked. After standing outside her husband's motel room for an hour and forty-five minutes while they argued over money and the divorce, appellant shot her husband.

After appellant shot her husband she pushed open the motel room door and was kneeling over Mr. Buhrle when the people from the adjoining rooms arrived at the scene. Appellant then began shouting that someone had shot her husband. In addition, while appellant asserts that she made no effort to flee, she did attempt to conceal the pair of rubber gloves she was seen wearing shortly after the shooting and she hid the rifle underneath a nearby trailerhouse. At the time that appellant was arrested she had her husband's wallet in her possession.

At trial appellant relied upon the theory of self-defense. Edith Buhrle took the stand and told of a history of violence on the part of the deceased towards her, her children and the household furnishings. She further testified that when she shot her husband she had thought that he was reaching for the gun that he customarily kept under his bed so that he could kill her. No gun, however, was found in Mr. Buhrle's motel room.

## EXCLUSION OF THE TESTIMONY OF A DEFENSE PSYCHOLOGIST

■ The criteria to be used in determining the admissibility of an expert witness' testimony are set out in *Dyas v. United States*, 376 A.2d 827, 832 (D.C.C.A.1977), cert. denied 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977). As stated by the court:

1. Robert Menninger, M.D., The Menninger Foundation, Topeka, Kansas, during a speech at Wyoming's First State Conference, *Family Violence: A Cycle of Abuse*, defined battering

"(1) * * * the subject matter 'must be so distinctively related to some science, profession, business, or occupation *as to be beyond the ken of the average layman* [emphasis added]'; (2) 'the witness must have sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference *will probably aid the trier in his search for truth* [emphasis added]'; (3) expert testimony is inadmissible if 'the state of the pertinent art or scientific knowledge does not permit a reasonable opinion to be asserted even by an expert.' " McCormick on Evidence, § 13, pp. 29–31 (2d Ed.1972)

In this case the trial judge used the criteria in *Dyas v. United States*, supra, in making his ruling. His reasons for rejecting the testimony of the expert witness, Dr. Lenore E. Walker, were set out in detail.

Dr. Walker possesses impressive academic and professional credentials and she is the pioneer in the field of the so-called "battered woman syndrome."[1] By her own characterization she is the foremost authority on that phenomenon and also describes herself as a feminist psychologist.

During extensive voir dire by the State, it was shown that in the introduction of her book, *The Battered Woman* (1979), Dr. Walker stated at pp. xv–xvi:

"I think this research has raised more questions for me than it has answered. As a trained researcher, I felt uneasy about stating some of my conclusions in this book. They seemed too tentative to write down in the positive manner which I have used. Yet they are confirmed repeatedly by all the available data so far. * * *"

In answer to a follow-up question by defense counsel, Dr. Walker explained the statement from her book as follows:

"That's why I received the research grant, to study the matter in a much more scientific way. * * * "

as follows: "To beat with successive blows; to beat repeatedly and with violence, so as to bruise, shatter, or demolish." (Laramie, August 1978).

It was further revealed on voir dire that her research was ongoing and that a deadline for completion was yet in the future. Voir dire was followed by an offer of proof by defense counsel.

Appellant's offer of proof indicated that Dr. Walker would testify that:

1) Mrs. Buhrle was a battered woman and a battered woman's behavior differs from that of other women.

2) Mrs. Buhrle was in a state of learned helplessness resulting in loss of free will.

3) Because of learned helplessness, Mrs. Buhrle's ability to walk away from a situation or escape was impaired.

4) Mrs. Buhrle perceived herself to be acting in self-defense.

The trial judge ruled that Dr. Walker's testimony was not admissible. The reasons for this ruling were:

1) Voir dire did not adequately demonstrate that the state of the art permitted a reasonable opinion.

2) The reasons for opinions were not adequately explained, were difficult to understand; and therefore, would not aid the jury.

3) Appellant's state of mind at the time of the shooting was not adequately explained; and therefore, this testimony would not aid the jury in its determination.

The record indicates that research in the "battered woman syndrome" is in its infancy; that objectives are difficult to identify; that statistical analysis was in the preparation stage; and that acceptance or recognition of the phenomenon is largely limited to the people who are actively engaged in the research and the people making research grants.

In the case at bar the shooting occurred well after the altercation with the victim in which appellant was beaten. Seven days later Mrs. Buhrle went to the victim's motel room and after arguing with him an hour and forty-five minutes she shot him. Insofar as voir dire reveals, this is not the standard battered woman self-defense situation. In explaining her opinions, Dr. Walker did not consider these factors which are departures from the standard battered woman behavior. This is not to deny a battered woman syndrome and all its ramifications. Suffice it to say defendant failed to demonstrate to the trial court that the state of the art would permit a reasonable expert opinion, nor would the proposed opinions, considering omissions in foundation, aid the jury.

The quotation from Dr. Walker's book, *The Battered Woman*, supra, and elsewhere in her voir dire suggests that Dr. Walker may make certain conclusions and state certain theories, then engage in research to attempt to substantiate those theories and conclusions. The trial judge may have concluded that she did this with Mrs. Buhrle. Dr. Walker was vague in her explanation of Mrs. Buhrle's behavior if such behavior did not fit into the pattern of battered women. For example, her explanation of why Mrs. Buhrle took a hunting rifle to the motel and why she hid the gun and gloves after the shooting apparently did not fit into the battered woman syndrome; therefore, these acts were inadequately explained and apparently ignored by Dr. Walker in arriving at an opinion.

The trial judge expressed some difficulty in understanding Dr. Walker's explanations and after he had asked several questions of Dr. Walker, said, "But you probably answered my question satisfactorily to you, but not to me. I don't understand the answer to my question." This court experienced the same difficulty. It might reasonably be assumed, therefore, that if the trial court and the appellate court had difficulty understanding the expert's explanations, so would the jury. The "aura of special reliability and trustworthiness" surrounding scientific or expert testimony, particularly calls for trial court discretion. *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973).

In urging the admission of Dr. Walker's testimony, defendant relies principally on *Ibn-Tamas v. United States*, 407 A.2d 626 (D.C.C.A.1979); and *State v. Thomas*, Nos. 39698, 40028 (Ohio App., filed July 24,

1980).[2] In both of these cases wives were charged with murder of their husbands. In both, the accused presented a theory of self-defense. Each was convicted after a jury trial; on appeal *Ibn-Tamas* was remanded and *Thomas* was reversed. In both cases the accused had sought to call expert witnesses to present testimony on the psychology of battered women, and in both cases the trial judge excluded the testimony.

In *Ibn-Tamas*, supra, the appellate court remanded the case for specific findings on the criteria set forth in *Dyas v. United States*, supra. In the case at bar the trial judge in fact made specific findings as to the Dyas criteria.

*Ibn-Tamas v. United States*, supra, can also be distinguished in the opinions that the expert proposed to give. The defense proffered expert testimony in *Ibn-Tamas*, supra, p. 631, for two purposes: "To describe the phenomenon of 'wife battering,' and to give her opinion of the extent to which appellant's personality and behavior corresponded to those of 110 battered women Dr. Walker had studied." The proposed witness in *Ibn-Tamas*, supra, was not going to express an opinion on the ultimate question whether Mrs. Ibn-Tamas actually and reasonably believed she was in danger when she shot her husband. Rather, the witness would have merely supplied background data to help the jury make that crucial determination.

In the case at bar, however, Dr. Walker proposed to express such opinion. Dr. Walker also expected to express an opinion on whether or not Mrs. Buhrle was in fear of her life at the time of the shooting and whether such fear was reasonable; and she proposed to make the decision for the jury whether Edith Buhrle was capable of retreating at the instant when the victim was shot.

*Ibn-Tamas* and *Thomas*, supra, can further be distinguished in that the killing occurred during or immediately after a battering incident. The shooting of Kenneth Buhrle occurred a week after an altercation.

Finally, defense counsel proposed to ask Dr. Walker if in her opinion Edith Buhrle believed that she was acting in self-defense when she shot her husband. Clearly, in the case at bar, appellant proposed to go far beyond what was proposed in *Ibn-Tamas*, supra.

In *State v. Thomas*, supra, the appeals court found that the criteria in *Dyas v. United States*, supra, had been satisfied. They went on to expressly approve the use of expert testimony to substantiate the reasonableness of a claim of self-defense by a battered woman.

In our holding here we are not saying that this type of expert testimony is not admissible; we are merely holding that the state of the art was not adequately demonstrated to the court, and because of inadequate foundation the proposed opinions would not aid the jury.

The court did not abuse its discretion in rejecting the proffered expert testimony.

## ATTACKING THE CREDIBILITY OF A WITNESS BY INTRODUCTION OF SPECIFIC INSTANCES OF CONDUCT

 Next appellant contends that the trial judge abused his discretion when he restricted the cross-examination of a state witness concerning a civil complaint that had been brought against this witness. We cannot agree.

We recognize that cross-examination is a fundamental right granted by the confrontation clause contained in the Sixth Amendment to the United States Constitution. *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Holm v. State*, Wyo., 404 P.2d 740 (1965). We further recognize that the confrontation right is binding in state criminal prosecutions by virtue of the Fourteenth Amendment to the Constitution of the United States. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

The right of an accused, however, to confront and cross-examine the witnesses

---

**2.** Cf., *People v. White*, 90 Ill.App.3d 1067, 46 Ill.Dec. 474, 414 N.E.2d 196 (1980).

against him has recognized limitations. Those limitations are left largely to the discretion of the trial judge. *People v. Wynsma*, Colo.App., 541 P.2d 328 (1975); *United States v. Dwyer*, 539 F.2d 924 (2nd Cir. 1976). As stated in Rule 608(b), W.R.E.:

"(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction for crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, *in the discretion of the court*, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness * * *." (Emphasis added.)

In *Nimmo v. State*, Wyo., 603 P.2d 386 (1979), the appellant alleged an improper restriction of his cross-examination of a prosecution witness. Nimmo was charged with two counts of false swearing. Quarberg, the witness whom the defense sought to impeach, gave testimony about a conversation he had with Nimmo concerning certain questionable costs. Nimmo's attempt to characterize the Quarberg testimony as critical to the prosecution's case was discounted by this court as follows:

" * * * Quarberg's testimony merely reiterated other evidence presented at the trial.

\*　　\*　　\*　　\*　　\*　　\*

"The record reflects that Quarberg's testimony is cumulative. This belies the contention that he was a principal or critical witness * * *." *Nimmo v. State*, supra, p. 392.

The majority go on to state:

" * * * We have recognized before that an improper limitation of cross-examination may not be prejudicial. [Citation.] While it must be conceded that a defendant has an absolute right to cross-examine a witness about anything which was the subject of direct examination, *there is a distinction between a denial of cross-examination and its limitation*. The extent

and manner of a witness' cross-examination in such cases is in the court's discretion. [Citations.] A trial court's discretionary ruling on evidence will not be upset except for clear abuse which is appellant's burden to demonstrate. [Citations.]" Id. (Emphasis added.)

In the case at bar Sharon Delight Hubbell was called as a witness for the State. She testified in substance to a conversation that she overheard in a restaurant one week after the shooting between appellant and a younger man. The conversation contained several incriminating remarks made by appellant. Just as the testimony of the witness Quarberg in *Nimmo v. State*, supra, was cumulative and corroborated by other evidence, so too was the evidence provided by Sharon Hubbell. Appellant's statement in the restaurant to the effect that, "the minute he opened the door, I blasted him," was also testified to by Vernon Hubbell, Sharon's husband, who was also present at the time.

Other details from the conversation in the restaurant, such as the appellant and the decedent arguing over a divorce and money before the shooting, were confirmed by witnesses from the Bel Air Motel where the shooting occurred. The victim, Kenneth Buhrle, as he lay wounded, made statements to two prosecution witnesses that his wife had shot him after an argument. Edith Buhrle's remarks in the restaurant about hiding the rifle under a trailer after the shooting were substantiated by a witness who actually saw her carry the gun off and followed her to see how she disposed of it. Therefore, even "[a]ssuming arguendo, that it was improper to so limit the cross-examination, prejudice must be demonstrated to justify a reversal. * * * The factual situation here does not demonstrate prejudice." *Nimmo v. State*, supra, p. 393. And because no Sixth Amendment or other constitutional objection was raised at the trial, "we need not accept the view of the Defendant that regardless of the facts and circumstances, it must be deemed plain error requiring an automatic reversal." *Campbell v. State*, Wyo., 589 P.2d 358, pp. 366–367 (1979); Rule 49, W.R.Cr.P.[3]

"(b) Plain error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

---

3. Rule 49, W.R.Cr.P.:

"(a) Harmless error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

The court was concerned that the jury might confuse the issues if the witness were put on trial for an unadjudicated matter which might yet be the subject of litigation; therefore, he limited the cross-examination. In limiting the cross-examination of Sharon Delight Hubbell the trial judge exercised his discretion under Rules 608(b), supra, and 403, W.R.E.[4] A trial court's discretionary ruling on evidence will not be overturned except for clear abuse which is appellant's burden to demonstrate. *Nimmo v. State,* supra.

Defense counsel in his brief seems to concede that rulings under Rule 608(b) are discretionary. He attempts, however, to show abuse of discretion by alluding to rebuttal testimony produced by the State to the effect that Mrs. Buhrle had signed her husband's name without authority. This testimony was permitted in a different posture. This testimony came in rebuttal, only after the defense had placed Mrs. Buhrle's character in issue. Defense counsel does not claim that this type of rebuttal testimony is reversible standing alone, but indicates that in fairness and consistency Sharon Hubbell should have been subject to cross-examination in like manner. Perhaps another way to state appellant's position is: If the trial court erred in limiting the cross-examination of Sharon Hubbell, it should have committed the same error and limited the examination of the State's rebuttal witness. We are unaware of any rule of offsetting errors and do not agree that appellant has demonstrated that the trial judge abused his discretion.

The trial court's ruling under 608(b), W.R.E., did not constitute prejudicial error or an abuse of discretion.

4. Rule 403, W.R.E.:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

## DISCRETIONARY RULING WHETHER TO EXCLUDE EVIDENCE BECAUSE IT IS REMOTE AND CUMULATIVE

██ Mrs. Buhrle testified at great length with respect to violence visited upon her by the victim. She was permitted to go back as far as eighteen years, relating specific acts of violence upon her and others. The trial judge was very liberal in allowing this type of testimony. There was other testimony to the same effect. The State never claimed nor produced any evidence to dispute Mrs. Buhrle's testimony that she had been subject to violence for many years. It was only when the defense attempted to again go over specific acts of violence occurring ten years before that the court limited this area of inquiry.

Appellant's eldest son, Paul Dixon, was called by the appellant to testify on her behalf. Mr. Dixon had not lived in the Buhrle home since 1969. Appellant proposed to elicit from this witness specific past acts of violence committed by the victim prior to 1969.

The trial court disallowed part of Mr. Dixon's testimony, ruling that this part of the evidence was remote and cumulative. As the trial judge stated:

"I'll permit the testimony of this witness to go to the—to the general relationship between the husband and wife in this case, but not into any specific question and answers as to specific incidents."

The witness, Mr. Dixon, thereafter testified that his mother, appellant, was subject to physical and mental abuse and that he saw various incidents of violence in the home. Dixon also testified that the victim kept loaded guns around the house.

Evidence of specific acts of violence are generally admissible in this type case. *Evans v. United States,* 277 F.2d 354, 1 A.L.R.3d 566 (D.C.Cir.1960); *Mortimore v. State,* 24 Wyo. 452, 161 P. 766 (1916); Rule 404(a)(2), W.R.E.;[5] Annotation 1 A.L.R.

5. Rule 404(a)(2), W.R.E.:

"(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

571; 1 Wigmore, Evidence § 63 (1979); 2 Wigmore, Evidence § 248 (1979); 1 Wharton's Criminal Evidence, § 248 (1972).

The trial judge did not, however, abuse his discretion in limiting the testimony of Paul Dixon as provided in Rule 403, W.R.E., because the evidence was remote and cumulative.

Affirmed.

\* \* \* \* \* \*

"(2) Character of Victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;"