**Beverly Ann IBN–TAMAS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 79–1278.**

District of Columbia Court of Appeals.

Argued Sept. 18, 1980.

Decided Jan. 17, 1983.

William E. McDaniels, Washington, D.C., with whom Ellen S. Huvelle, Washington, D.C., was on the brief, for appellant.

Benjamin B. Sendor, Asst. U.S. Atty., Washington, D.C., with whom Charles F.C. Ruff, U.S. Atty., Washington, D.C., at the time the brief was filed, John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell, and William J. Bowman, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER and PRYOR,* Associate Judges, and GALLAGHER,** Associate Judge, Retired.

### JUDGMENT

This is an appeal from an order entered after remand proceedings. We earlier ordered those proceedings, with discretion whether to hold an evidentiary hearing,[1] for clarification because "we cannot be certain that the record otherwise supports the ruling as a matter of law." *Ibn-Tamas v. United States,* 407 A.2d 626, 640 n. 29 (D.C.

---

\* Associate Judge Pryor was selected by random process to replace Associate Judge Harris upon his retirement from the court.

\*\* Separate concurring statement of Associate Judge Gallagher at p. 894.

1. We find no abuse of discretion in proceeding without a hearing and on submission of memoranda.

1979). The trial court has stated on remand that it did consider the relevant factors as outlined by this court in its original ruling. It concluded, *inter alia,* "that defendant failed to establish a general acceptance by the expert's colleagues of the methodology used in the expert's study of 'battered women.'" Since the expert's testimony could have been excluded "for failure to meet either the second or third elements of the test," *id.* at 635, and the trial court did exclude that testimony on one such basis, we are left with deciding whether "the evidence, despite our inability to observe the witness, permits but one interpretation." *Id.* at 636 n. 17. As the court said in its earlier decision in this case, our scope of review on this issue is "narrow" to the point where manifest error must appear for reversal. *Id.* at 632. We hold that the trial judge was not compelled, as a matter of law, to admit the evidence. He had discretion whether to admit it and "this court should not substitute its judgment in [such] a discretionary ruling . . . ." *Id.* at 636 n. 17.

Accordingly, the order appealed from is

*Affirmed.*

GALLAGHER, Associate Judge, Retired, concurring:

I believe this proffered testimony on "battered women" is properly considered to be within the category of novel scientific evidence. Consequently, it falls within the underlying doctrine of *Frye v. United States,* 54 App.D.C. 46, 293 F. 1013 (1923).[1] The essence of *Frye* is that there must be a reliable body of scientific opinion supporting a *novel scientific theory* before it is admissible in evidence.

Subsequent to the decision of this court in its first opinion, *Ibn-Tamas v. United States,* 407 A.2d 626 (D.C.1979), a book authored by Dr. Lenore E. Walker, whose expert testimony on "battered women" was proffered in *Ibn-Tamas, supra,* and which

testimony is at the core of the issue on this appeal, was published, entitled, *The Battered Woman* (Harper & Rowe, 1979). In the introduction of that book, Dr. Walker made this statement:

> I think this research has raised more questions for me than it has answered. As a trained researcher, I felt uneasy about stating some of the conclusions in this book. They seemed too tentative to write down in the positive manner which I have used. Yet they are confirmed repeatedly by all the available data so far. (p. XV–XVI).

Dr. Walker went on to define the term: "A battered woman is a woman who is repeatedly subjected to any forceful physical *or psychological behavior* by a man in order to coerce her to do something he wants her to do without any concern for her rights." (p. XV) [emphasis added].

In discussing the viewpoint from which she wrote *The Battered Woman,* Dr. Walker said: "[I] view women as victims in order to understand what the toll of such domestic violence is like for them. Unfortunately, in doing so *I tend to place all men in an especially negative light,* instead of just those men who do commit such crimes." (p. XVII) [emphasis added].

Initially, I must say that though there may be good reason for the light in which, for the sake of the study, Dr. Walker feels she must place "all men," it does give one a bit of a start. While it may be that "all men" are victims of the male role in society, it would seem one must establish the necessity for Dr. Walker's premise, which at first glance is a trifle disconcerting. It appears that the Doctor's approach would require tracing the man-woman relationship back to the roots of civilization—a subject which would require a little pondering, I should think.

In a case subsequent to *Ibn-Tamas I, supra,* the Supreme Court of Wyoming had

---

1. We are of course bound by *Frye* under the controlling rule in *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.App.1971).

misgivings about the "state of the art" on this subject. *Buhrle v. State of Wyoming,* 627 P.2d 1374 (1981). During the trial in that case, Dr. Walker was questioned on voir dire concerning the statement in her book that she felt uneasy about some of its conclusions and felt they were too tentative to write in the positive manner she had used. In explaining the statement, Dr. Walker testified she had received a research grant "to study the matter in a much more scientific way" and that her research was ongoing with completion to be in the future. *Id.* at 1370–77. For these and other reasons, the court went on to conclude that "research in 'the battered woman syndrome' is in its infancy." *Id.* at 1377. In so doing, the court did not rule out admissibility in the future if by then an adequate foundation is laid.

I agree. *Frye* requires the profferor of the expert on a new scientific theory to show that the evidence is not still in the experimental stage but has gained a scientific acceptance substantial enough to warrant an exercise of judicial discretion in favor of admissibility. The *Buhrle* opinion demonstrates the fundamental soundness of *Frye.* As the court in *Frye* pointed out, scientific evidence by its nature necessarily has a special impact on a jury. This is why the judiciary should proceed with reasonable caution, where the evidence comes as a new scientific theory, as distinguished from a well established field, e.g., fingerprint evidence.

I do not mean to imply I believe that expert testimony on the "battered woman" will not lend itself to a recognition with sufficient scientific underpinning to warrant its admission into evidence in court. What I do say is that, as *Frye* soundly requires, more needs to be known by the court initially in the specific area of the science before its admissibility will be warranted.

Liberally construing the 1923 opinion in *Frye*—unless we are to quibble for the sake of quibbling—the essential meaning is that where expert testimony on a *novel* scientific theory is being proffered in evidence the court should require a showing of substantial support from the appropriate field of science (frequently a specialized segment of a science) showing the dependability of the new scientific theory. I realize of course that cross-examination of the expert to attack the weight of the testimony is always available. But the sound underpinning of *Frye* is that since the expert testimony necessarily carries with it an "aura of special reliability and trustworthiness," [2] introduction of a new scientific theory should initially be met in court with an exercise of prudence.

As *Frye* wisely points out, "just when a scientific principle crosses the line between experimental and demonstrable stages is difficult to define." *Frye v. United States, supra,* 54 App.D.C. at 47, 293 F. at 1014. The court then firmly stated, however, that: "Somewhere in this twilight zone the evidential force of the principle must be recognized . . . ." *Id.*

I am aware that much has been written—both in appellate decisions and legal periodicals—attacking the admissibility test laid down in *Frye.* Frequently, *Frye* is set up as enunciating the proposition that prior to admissibility there must be a scientific "consensus" in support of the novel theory. In doing so, a rather strict constructionist approach is usually taken to the "general acceptance" terminology in the opinion.

The statement questioned is that "the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." *Id.* Reading this statement in conjunction with the preceding statements, I would not be inclined to view it hypercritically.[3] What apparent-

---

**2.** *United States v. Amaral,* 488 F.2d 1148, 1152 (9th Cir.1973).

**3.** In 1923, when *Frye* was written, as a society we were not accustomed to the plethora of scientific experts in the various specialties which now exist.

ly has brought an array of opposition to *Frye* is a rather stringent interpretation of the term "general acceptance" used by the court in *Frye.* I daresay if the word "general" were stricken the critics would be left with little to attack in view of the eminently sound, though brief, discussion in the opinion. For example, a literal interpretation of that term does not mesh with the court's prior statement that "... [s]omewhere in this twilight zone the evidential force of *the principle must be recognized* ...." *Id.* (emphasis added). The court was there referring to the zone between the experimental and demonstrable stage. I think *Frye* should be read a little less inhospitably and with more receptiveness, as it is essentially sound.

All in all, I am not prepared to say the trial court abused its discretion in not admitting the evidence in this case.