STATE of Missouri, (Plaintiff) Respondent,

v.

John Albert BIBBS, (Defendant) Appellant.

No. 55518.

Supreme Court of Missouri,
Division No. 1.

Dec. 14, 1970.

Motion for Rehearing or to Transfer to Court
En Banc Denied Jan. 11, 1971.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

John C. Boyd, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, for appellant.

HOLMAN, Judge.

Defendant was charged with the offense of assault with intent to kill with malice aforethought under the provisions of § 559.180.[1] He was also charged with three prior felony convictions. See § 556.280. The jury found defendant guilty of the offense charged and the court fixed his punishment at imprisonment for a term of twenty-five years. Defendant has appealed from the ensuing judgment. We affirm.

At about 7:30 p. m. on January 17, 1969, Officers Mitchell and Holloway of the St. Louis Police Department were patrolling the area of Goodfellow and Page Avenue in an unmarked patrol car. They were following a 1962 Chevrolet to which their attention was drawn by the way it was being driven. They checked their sheet listing stolen automobiles and saw that the license number on the Chevrolet was listed on the sheet. Their car did not have the usual red dome light of regular patrol cars so they turned on the flasher for the four headlights and the siren and when the driver sought to escape they pursued the car. At a point on Blackstone the driver of the Chevrolet slowed and then suddenly jammed on the brakes and stopped the car. The driver of the police car was able to make a sudden stop, with his front bumper about three feet behind the rear of the Chevrolet. As the policemen were preparing to alight from the car the driver of the Chevrolet suddenly turned toward the rear and fired three shots through the back window in the direction of their car. The Chevrolet then started forward, but the officers in the police car were delayed because their engine had died and they had difficulty in starting. However, they immediately made an emergency broadcast over the police radio advising that they had been shot at from a car and giving a description of the car and driver. After their car was started they tried to follow the Chevrolet but soon lost sight of it. They cruised in the area until they did find it, empty, a short time later. They searched the surrounding area without success and then returned to their headquarters, the 7th District Police Station. None of the shots struck the car or its occupants.

In regard to the evidence as to the ability of the officers to see defendant under the circumstances the following testimony of Officer Mitchell is significant: "Q Did you see the face of the driver in that car, Officer? A Yes, sir, I did. Q When did you see his face? A Very clearly as our lights were flashing, and the high beam, they were flashing into the car and just lit the car well, we could see the driver clearly." Officer Holloway described the driver of the Chevrolet as "a

1. All statutory references are to RSMo 1969, V.A.M.S.

light-skinned Negro with long slender type face, with large eyes and bushy hair." Evidence of these officers concerning a police station identification of defendant will be stated later.

After the police broadcast a number of nearby police cars came to the area and Officer Burroughs, in one car, saw the Chevrolet coming toward his car on Bartmer at high speed. It jumped the curb apparently inflicting head injuries to the defendant who got out of the car and ran between two houses. Burroughs advised on the radio as to the direction defendant was running, and defendant was apprehended within a minute or two by officers in another car on Page who saw defendant in an areaway at 5348 Page. Because of defendant's head injuries he was taken from the place of arrest to Homer Phillips Hospital. About an hour later he was taken to the 7th District Police Station for booking.

Another officer present at the arrest scene searched the area nearby and found a .38 caliber Smith and Wesson revolver in a garage. It contained five spent rounds and there was testimony that it had been fired recently. At the trial both Officers Mitchell and Holloway identified defendant as the person who fired the shots.

Defendant did not testify and did not offer any evidence except an exhibit of the clothing he was wearing at the time of his arrest. This was offered because the arresting officers had said he was wearing dark clothing, including his pants, and the pants he was actually wearing were described as light khaki. Also, defendant brought out on cross-examination of the arresting officers that at the time of his arrest he had a slight mustache and goatee "in the process of growing." That testimony was elicited because neither of the officers fired upon saw any mustache or goatee at the time of the occurrence.

Defendant filed a motion to suppress any identification evidence of Officers Mitchell and Holloway because he did not have counsel present at the time they viewed him at the police station. That motion was heard and overruled prior to trial. At that hearing defendant testified that he had not been offered counsel or given any warning as to his constitutional rights before the two officers identified him. Officer Holloway testified that he knew a suspect had been arrested but did not know he was at the police station when, about an hour after the incident, he walked into the holdover and saw them booking defendant whom he recognized as the man who had shot at him and Officer Mitchell. Officer Laux testified that prior to the time defendant was seen by either of the officers the following had been read to him: "Right 1—You have the right to remain silent. Right 2—Anything you say can and will be used against you in a court of law. No. 3—You have a right to a lawyer and have him with you while you are being questioned. 4—If you can't afford to hire a lawyer one will be appointed for you before any questions if you so desire."

Defendant contends that the court erred in overruling the motion to suppress and in admitting the identification testimony of the two officers at the trial. He cites United States v. Wade, 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926, Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. Neither Wade nor Gilbert is applicable to this case. They were pretrial, post-indictment cases involving a lineup conducted without notice to defendant's counsel. As is now well known, those cases hold that a defendant is entitled to have counsel present at a lineup so that said counsel will be prepared to bring out on cross-examination at later proceedings suggestive procedures or other unfairness that may have occurred at the lineup. Stovall involved the viewing of a suspect singly, without counsel, and it states that whether such a confrontation is a violation of due process depends on the totality of the surrounding circumstances.

We do not think that any of the three cases heretofore discussed are applicable to the case before us because here there was no lineup and no arranged confrontation of defendant by the two officers. Officer Holloway came upon defendant unintentionally in the ordinary course of his work an hour after the shooting. Before Officer Mitchell saw defendant at the station he had been told by Officer Holloway that they had the suspect downstairs. Under those circumstances it would appear that counsel would have been of little benefit to defendant. It is difficult to see how there could have been any suggestive procedures or other unfairness in that situation. It is suggested that defendant was wearing a hospital robe when he was observed at the station. While that might indicate that he was the suspect it also would make him more difficult to identify than if he had been dressed in street clothes. Even if we assume that the viewing of defendant by the officers comes within the classification of an arranged confrontation it was very similar to the prompt so-called on-the-scene confrontation to which Wade and Gilbert do not apply, and the absence of counsel would not make such illegal or impermissible. We so held in State v. Hamblin, Mo. Sup., 448 S.W.2d 603, and State v. Townes, Mo.Sup., 461 S.W.2d 761. And we do not think Stovall would preclude that conclusion. As indicated in Hamblin and Townes, it was important that the officers view defendant immediately so that if he were not identified as the guilty person he could be released and the search for the real offender continued. We observe in passing, however, that there was convincing evidence of an independent basis for the in-court identification. And, since we have held that Wade and Gilbert are not applicable in the situation before us the *per se* exclusionary rule of Gilbert would not apply. For the reasons stated we rule this point against defendant.

■ Defendant filed a motion seeking an order requiring the State to produce for inspection the grand jury testimony respecting this charge, the police report, and all evidence known to the State which would be favorable to defendant. The court required production of the police report but overruled the remainder. Defendant contends that the court erred in the portion overruled because, "in view of defendant's limited resources, he was not otherwise able adequately to prepare for trial, and he was therefore deprived of due process and equal protection of the laws * * *."

No evidence was offered in support of this motion. All the witnesses were police officers. Defendant's attorney did make a statement to the court that he had had difficulty locating some of the witnesses and that one he talked with over the telephone had politely refused to discuss the case with him. The court did not err in refusing to order production of the grand jury testimony. We have consistently held that the inspection of such testimony should not be permitted for purposes of discovery. State ex rel. Clagett v. James, Mo.Sup., 327 S.W.2d 278 [9]; State v. McCaine, Mo.Sup., 460 S.W.2d 618 (1970).

■ In regard to the motion to require the State to produce all evidence known to it which would be favorable to the defendant we note that when it was being considered the Assistant Circuit Attorney stated that he had gone over the facts in detail with defendant's attorney and did not know of any evidence favorable to the defendant. Defendant now says in his brief that the circuit attorney had a photograph of defendant taken three weeks before the date of this offense showing that he had a pronounced beard and mustache, which photograph would have helped in his defense. While we doubt that the photograph (if admissible) would have substantially aided defendant in his defense we will not rule the question because this alleged fact is not mentioned in the motion for new trial and no evidence was offered to prove it. It is therefore not before us for review.

■ The next point briefed is that the court erred in overruling defendant's motion for an order to require the State to pay the cost for defendant to take the deposition of the witnesses endorsed on the information. The motion was filed the day before the case was to be tried and taken up on the morning of the trial. The court was warranted in overruling it because it was filed too late. On the merits, however, we note that a number of federal cases are cited which involve failure to furnish indigent defendants transcripts under various situations. We do not consider those cases applicable. Moreover, we have held that "there is no statute or rule of court in Missouri which fairly requires or authorizes the State to pay for (except upon acquittal) or to advance the costs of depositions taken or desired by a defendant. We further hold that neither the failure to so provide nor the failure of the Court to so order is a violation of any constitutional rights of defendant, federal or state." State v. Aubuchon, Mo.Sup., 381 S.W.2d 807, 813. We rule this point against defendant.

■ The defendant also complains of the argument of the circuit attorney in two respects. The first involves the following: "These officers are trained, they know who they observe and * * * they testified positively under oath as to the identity of their assailant and the defense didn't present any evidence; but the stories of the police officers, their testimony under oath, mind you, is undisputed, unrefuted and undenied. Mr. Green [defendant's attorney] will be with you and then I will have a chance to answer him—." Out of the hearing of the jury the defendant objected to the statement "undisputed, unrefuted and undenied" as being a comment on defendant's failure to testify. The court sustained the objection but overruled the motion for a mistrial. The jury was then instructed by the court to "disregard the last statement of the State's Attorney." The defendant says that the court's instruction was ineffective because it could

have been construed as referring to the incomplete sentence to the effect that the argument of defendant's attorney would follow. While we doubt that that is a reasonable conclusion, we rule that the argument does not constitute prejudicial error in any event. A very similar statement was held not to be reversible error in State v. Hampton, Mo.Sup., 430 S.W.2d 160. Moreover, in State v. Hutchinson, Mo. Sup., 458 S.W.2d 553, we said: "The argument in this case did not contain direct and certain reference to failure of appellant to testify. In a fact situation such as here presented, the scope of appellate review of the action of the trial court with reference to objections to the argument made is as stated in State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582, 588: 'Whether or not a particular improper argument is so prejudicial under the facts in the particular case, as to necessitate a reprimand of counsel or a discharge of the jury, is largely within the discretion of the trial court. An appellate court will not interfere unless the record shows that the trial court abused its discretion to the prejudice of the appellant.'" We rule that the trial court did not abuse its discretion in failing to sustain the motion to discharge the jury or in failing to sustain the motion for new trial and hence, as indicated, no reversible error occurred.

■ The other statement complained of is, "I don't want to get into any racial argument, I hate it, but I guess it's brought up to bring sympathy. I don't care what color Mr. Bibbs is. I don't care what color Officer Holloway is or Officer Mitchell. The man that stood up there and identified him, not any black man with a bushy haircut, was Officer Holloway, and I ask you is he—if you want to believe he is racially prejudiced, you had a chance to see him—" Defendant objected on the ground that the argument related to racial prejudice. The court sustained the objection and instructed the jury to disregard it but did not rule on a motion to discharge the jury. We rule that there was no reversible error. The argument was clearly invited by the

closing sentence of the argument of defendant's attorney, i. e., "If any black man who wanders into a dragnet like that, with a bushy haircut, is going to be sent away on a charge as serious as this, this City cannot go on this way."

■ The court in this case gave the usual instructions ordinarily given in a case of this kind. The defendant offered six cautionary instructions on the subject of his identification as the guilty party. The court gave two and refused four of those instructions. He now contends that the instructions given on that subject were not adequate and that the court erred in refusing the four others offered. The two given were:

"INSTRUCTION NO. 4. The Court instructs the jury that if there is any evidence before you that raises in your minds a reasonable doubt as to the presence of the defendant at the time and place where the crime is charged to have been committed, if you find a crime was committed, you will acquit the defendant.

"INSTRUCTION NO. 5. The Court instructs the jury that to justify the conviction of the defendant, his identity as the guilty person must be proved, beyond a reasonable doubt; if, therefore, the jury believe from the evidence there is a reasonable doubt as to his identity as the guilty person, you will acquit him."

The giving or refusal of cautionary instructions is discretionary with the trial court. State v. McDaniel, Mo.Sup., 392 S. W.2d 310. In an effort not to unduly extend this opinion we will not set out the refused instructions. However, we find that they contain comments on the evidence and caution the jury to an unnecessary and erroneous extent. The following excerpts therefrom will serve as an example: "You must consider such evidence as tends to show that this defendant was not the person who allegedly drove the 1962 white Chevrolet, including the testimony of Officer Burroughs, that the driver wore black pants, and the light colored pants worn by this defendant when he was arrested." "No class of testimony is more uncertain and less to be relied upon than that of identity." "Only two witnesses were present at the scene of the alleged assault, Officers Mitchell and Holloway. * * * Their testimony identifying him is merely the expression of an opinion and is to be regarded by the jury in the same light as any other opinion that may be expressed by a witness." We rule that the instructions given were adequate and that the court did not abuse its discretion in refusing the other cautionary instructions offered by defendant.

As a part of the same point the defendant has stated that "the Court erred in giving the instructions given by the Court on its own motion for the reason that the cumulative effect of all such instructions, even with the addition of two instructions offered by defendant, was insufficient adequately to guide the jury in dealing with the confusing and contradictory testimony of the State's witnesses on the issue of identification." This assignment probably does not raise anything in addition to the one we have last above ruled. It would also appear to be too general to merit consideration. We have, however, considered all of the instructions and do not find them to be insufficient to adequately guide the jury on the issue of identification.

■ The next contention is that the court erred in overruling defendant's motion for a judgment of acquittal because the evidence was insufficient to establish beyond a reasonable doubt that defendant was the person who committed the alleged assault. It is obvious that this contention is without merit. The positive identification of defendant by the two police officers as the person who fired the shots is certainly sufficient evidence from which the jury reasonably could find the defendant guilty.

■ The final contention is that the court erred in forcing defendant to go to

trial with counsel who was ineffective in this case and he was thus deprived of rights guaranteed under the Sixth and Fourteenth Amendments to the U. S. Constitution. Defendant was represented by court-appointed counsel at trial and is represented by different counsel on appeal. We decline to rule this point. Our position is fully explained in the case of State v. Blackwell, Mo.Sup., 459 S.W.2d 268 (1970), as follows: "We held in State v. Cluck, Mo.Sup., 451 S.W.2d 103, 107, that when a defendant believes that 'he was deprived of effective assistance of counsel at trial, he may file a motion to vacate sentence under S.Ct. Rule 27.26, V.A.M.R. An evidentiary hearing may then be held and a full disclosure of all the facts may be had.' We declined in that case to review the question as a part of the direct appeal. This conclusion was reached because alleged ineffective assistance of counsel is an issue which usually arises after the conclusion of the trial and as a result there has been no testimony offered on that specific issue, the facts pertinent thereto are not fully developed, and we do not have the benefit of findings, conclusions and a ruling thereon by the trial court."

The judgment is affirmed.

All concur.