**STATE of Missouri, Respondent,**

**v.**

**Larry Earl DAVIS, Appellant.**

**No. KCD 26270.**

Missouri Court of Appeals, Kansas City District.

Dec. 31, 1973.

Motion for Rehearing and/or Transfer Denied Feb. 1, 1974.

---

2. Borchers v. Borchers, *supra*; Tucker v. Burford, 95 S.W.2d 866 (Mo.App.1936) ; Tatum v. Bernard, 49 S.W.2d 1083, 1085 (Mo.App. 1932).

**116**

Austin F. Shute, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Richard E. Vodra, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, C. J., and PRITCHARD and SOMERVILLE, JJ.

PER CURIAM:

This is a direct appeal from a conviction of robbery in the first degree and a sentence of fifteen years. Defendant contends in a motion filed by counsel that the trial court erred in denying a new trial on the basis of newly-discovered evidence. By pro se motion, defendant contends he was denied effective assistance of counsel.

Ernest Jones, the victim of the robbery, was a participant in a crap game behind a tavern. He was a winner of an unspecified amount, though he entered the game with $780. Jones left the game and was entering his car when a man approached him, stuck a gun in his face and demanded his money. The man and Jones scuffled and fell to the ground, and the gun was fired. As Jones began to rise from the ground, a second assailant approached Jones, placed a gun in his back and fired twice. Wounded, Jones leaned against a car as the assailants relieved him of his money and then escaped.

At trial, Jones identified defendant as the man who first stuck him up and with whom he had wrestled. Jones had seen defendant around the tavern on other nights and had seen him standing near the crap game before he was attacked. Also, he knew defendant from an occasion sometime before the night of the crime when he had given him a ride. Jones had picked defendant's picture from a dozen or so shown him by the police, and had identified him at the police lineup.

Defendant, his mother, sister and brother-in-law took the stand to testify that he had been home all day on the day of the crime. They testified that defendant had gone to the tavern only after they had heard the police cars and the ambulance go by. Another defense witness, John "Junior" Moore, testified he had been a participant in the crap game and had seen Jones wrestling with his first assailant. Though Moore could not identify the assailant, he was sure it was not the defendant. Moore said the first time he saw the defendant that day was after the police cars and ambulance had arrived.

The jury found defendant guilty and recommended a sentence of thirty years. Defendant moved immediately to be allowed to put on the testimony of Leroy Sherrils. The court granted permission for Sherrils to testify.

Sherrils said he had been a player in the crap game and had seen Jones being robbed. He knew who Jones' attackers were, but said the defendant was not one of them. Although the trial judge pressed him vigorously, he refused to give the names of the persons he claimed were the assailants. It is worth noting in light of

subsequent events that the trial judge indicated in the record at the time the evidence was offered and heard that the witness was intoxicated. The witness stated he had not come forward before because he did not want to get involved with "street activities."

As noted, defendant's trial attorney filed a motion for a new trial on the grounds of newly-discovered evidence and a motion to reduce appellant's sentence. At the hearing on these motions, the State put on evidence which tended to show that Sherrils had come to the prosecutor's office the day after he testified and withdrawn his story, saying he had been drunk when he testified.

On appeal, appellant's first point urges that this court find that a new trial should have been granted on the newly-discovered evidence of Leroy Sherrils, and Ernest Jones' alleged withdrawal of his identification of appellant.

State v. Pinkerman, 349 S.W.2d 951 (Mo.1961), holds that a new trial on the basis of newly discovered evidence should be granted when the appellant succeeds in showing:

" . . . that the evidence first came to his knowledge after the trial; that it was not due to lack of diligence that it did not come sooner; that it was so material that it would probably produce a different result on a new trial; that it was not merely cumulative; that the object of the testimony was not merely to impeach the character or credit of a witness, and the affidavit of the witness himself should be produced, or its absence accounted for. State v. Brotherton, Mo. Sup., 266 S.W.2d 712, 718." 349 S.W.2d at 953.

█ Measured by this standard, Sherrils' testimony appears, first, to have been discoverable by the exercise of due diligence in the same manner as John "Junior" Moore had been turned up to testify to largely the same facts. Also, his testimony is cumulative of Moore's because he did testify to (largely) the same events. Finally, Sherrils apparently made a withdrawal of his testimony after he had given it. The trial court overruled this motion and properly so; we affirm that action.

Appellant filed a pro se motion for a new trial alleging the ineffective assistance of counsel. Specifically, he charged that his trial attorney had not investigated Jones before the trial so as to find out he could be impeached as to his identification of the appellant. Secondly, he claimed counsel had failed to convey the story of Jones' alleged recantation of his identification of appellant to the court before the jury retired. Thirdly, he claimed that his attorney had not sought out a key witness, one Charles Ross, with sufficient energy, and, finally, that the attorney had failed to file motions for acquittal and preserve any trial errors.

At a subsequent hearing on defendant's pro se motion, defendant's brother-in-law, John Schockley, said Jones had told him he knew the defendant had not committed the crime. According to the witness he was given this information sometime after the presentation of the evidence for both sides, while out in the hall of the courthouse. He conveyed this information to the defendant. Defendant testified he had told his attorney about Jones' allegedly recanting before the final argument was offered, but that Harwood had refused to tell the court about it. Defendant testified that he had asked trial counsel to assure that Charles Ross would testify, but that trial counsel had not really tried to obtain him. He voiced other dissatisfactions with his attorney concerning the filing of motions and the preservation of trial error. None of these present any error, let alone prejudicial error.

Trial counsel testified he was not sure when he had first heard the story about Jones recanting. He had already been told that Leroy Sherrils was going to testify and had felt his testimony would be more

valuable. It was a matter of personal judgment that he relied on the prosecutor's files, Jones' statement to the police, and his client's information rather than investigate Jones directly, although the prosecutor had run a record check for him and Jones had only traffic arrests. Likewise, he had chosen to put forward the newly-discovered evidence in his motion for a new trial as being the only question of any substance.

The trial court overruled the pro se motion for a new trial, but granted a reduction in sentence to fifteen years.

■ The alleged recantation by Jones was not presented as newly-discovered evidence at the hearing below, but tested as such, it, too, must be rejected as a basis for new trial. The thrust of Schockley's testimony was to impeach the witness Jones. Such impeaching testimony cannot be newly-discovered evidence under the test above.

Appellant urges that the issue of ineffective assistance of counsel be reviewed on a direct appeal, contrary to a number of cases in Missouri—State v. Cluck, 451 S.W.2d 103 (Mo.1970); State v. Bibbs, 461 S.W.2d 755 (Mo.1970); and State v. Sockel, 485 S.W.2d 393 (Mo.1972). These cases based the refusal to review the issue on the lack of sufficient record of the trial attorney's behavior. Almost half of the transcript before this court reports the testimony and argument by counsel specially appointed to assist the defendant on his pro se motion raising that issue.

The record before this court is sufficient to allow a resolution on appeal. The appellant's second point will be reviewed.

■ The leading case in this area, McQueen v. State, 475 S.W.2d 111 (Mo. banc 1971), sets out the standards by which assertions such as appellant's are to be tested on appeal. In Justice Finch's concurring opinion in McQueen, he stated that the determinative factor in a finding of ineffective assistance of counsel was whether the defendant was prejudiced by the counsel's actions. This prejudice is to be measured by whether the defendant has received a "fair trial." That the trial counsel should have acted differently or adopted different "trial tactics" does not entitle a defendant to a new trial. Jackson v. State, 465 S.W.2d 642; (Mo.1971); Anderson v. State, 487 S.W.2d 455 (Mo. 1972); Tucker v. State, 481 S.W.2d 10 (Mo.1972).

■ Defendant claims that he was prejudiced by his attorney's failure to investigate Jones more thoroughly before the trial because he would have discovered Jones could be impeached as to his identification of defendant. Likewise, he asserts that by trial counsel's failing to bring this matter to the court's attention when he learned of it, the appellant was deprived of a fair trial. It is far from clear that any amount of pretrial investigation would have disclosed any evidence sufficient to impeach, discredit or otherwise change the testimony of Jones. The evidence offered as to the conversations in the hallway at or near the time the case was submitted are at best equivocal. It is unlikely that their repetition to the jury would have influenced the jury in any way to alter its finding of guilty.

A review of the record discloses that appellant's trial attorney made an informed choice not to investigate Jones because he had already seen Jones' statement to the prosecutor, and because appellant had assured him that Jones had identified him at the lineup and from photographs. This was clearly a tactical decision and not open to challenge on appeal. That trial counsel did not relate the story of Jones' recantation to the court also falls into this category, as he had Sherrils' testimony available to him and had strong doubts about the admissibility of Schockley's testimony as newly discovered evidence and hearsay which, at best, would have been impeachment of Jones.

As required by McQueen v. State, supra, trial counsel made an investigation which

was adequate to put on the available defenses for the appellant. The record shows that he presented the alibi evidence of four witnesses and vigorously attacked Jones' testimony on cross-examination. That he might have proceeded differently does not entitle appellant to a new trial. Thebeau v. State, 491 S.W.2d 275 (Mo. 1973).

The appellant claims that his trial attorney did not make sufficient efforts to obtain Charles Ross as a witness. The evidence showed that trial counsel had located Ross' mother and had delivered a subpoena to her for her son. This is sufficient to establish a good faith effort to locate Ross, which is all that is required of a trial attorney. Jackson v. State, supra; State v. Woolbright, 449 S.W.2d 602 (Mo. 1970). No prejudice is shown by appellant from Harwood's efforts in this matter or in his choice of the "trial tactics" he followed in not preserving any trial error or filing any motions for acquittal.

Judgment affirmed.