**STATE of Missouri, Plaintiff-Respondent**

v.

**Helen Angela MARTIN,
Defendant-Appellant.**

**No. 46898.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 7, 1984.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
March 8, 1984.
Application to Transfer Denied
April 16, 1984.

Paul J. Passanante, St. Louis, for defendant-appellant.

Kristie Lynne Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GAERTNER, Presiding Judge.

Appellant was found guilty by a jury of the offense of capital murder, Section 565.-001, RSMo 1978 and sentenced to life imprisonment without parole for fifty years.

Appellant does not challenge the sufficiency of the evidence. The victim of the murder was appellant's husband, Ronald Martin. They had lived together since 1973, marrying in 1976, the year their daughter was born. Their wedded life was not always blissful. Appellant testified to many incidents of physical and psychological abuse of her by her husband. Financial difficulties also developed. In September 1980 they separated, appellant remaining in the marital home with her daughter, Ronald moving to a girlfriend's apartment. Ronald talked about having the house blown up for the insurance which amounted to $380,000 on the building and contents. Appellant feared he would do this while she was in the house.

A young woman, Elizabeth Jean Cash, moved into the house with appellant shortly after the separation. Appellant spoke very freely with Cash about her problems, fears, and plans. In October, she told Cash she had paid a man named "Red" from Rolla, Missouri, $5,000 to kill her husband, but Red had "backed out." She told Cash several times in November that a St. Louis bar owner had referred her to a man who would do the job for $10,000. On November 27, 1980, one Robert Bratcher came to the house and spoke with appellant for several hours. When he left, appellant told Cash that she had hired him to kill Ronald for $10,000 payable from insurance money she would receive. She was the named beneficiary of insurance policies on Ronald's life which, including double indemnity, totalled $925,000.

On December 4, 1980, appellant brought Bratcher to the house about 7:00 p.m. Cash overheard him tell appellant Ronald was the hardest man he had ever tried to "hit" because her husband was never alone. Bratcher remained overnight. Ronald was expected at the house the following afternoon to obtain appellant's signature for a loan needed to avoid foreclosure on the house mortgage. He arrived about 1:30 p.m. with Jack Becker. Bratcher hid in the basement. Cash and Becker left to buy groceries and cash a check. Appellant and Ronald were in the kitchen. Bratcher came up behind Ronald and shot him in the neck. Appellant said, "He's not dying fast enough—hit him again," whereupon Bratcher shot him in the back. When Becker returned he was told Ronald had left and would meet him later. Cash was told what had happened. She helped clean up the blood spots in the kitchen. Bratcher removed the body. He and appellant later threw the gun and the clean-up material into a river. Then appellant, Bratcher, and Cash celebrated the latter's twenty-first birthday at various bars and restaurants.

On December 6, appellant reported her husband missing. On December 7 appellant paid the monthly premiums on three of Ronald's life insurance policies. Ronald's body was discovered on December 9, and

on the next day appellant made a video-taped confession to the police.

Five points are asserted on appeal for reversal: (1) improper communications between defense counsel, bailiffs, and sequestered jurors; (2) improper cross-examination of appellant; (3) exclusion of expert testimony on the issue of self-defense; (4) ineffective assistance of counsel for failing to adduce available evidence of diminished mental capacity; and (5) ineffective assistance of counsel by inadequately interviewing Bratcher and failing to call him as a witness.[1]

The record belies appellant's first point. The trial began February 16, 1982, and ended February 27, 1982. On the intervening Sunday, the defense attorneys and their secretary went to lunch at a cafeteria. By coincidence, the sequestered jurors were eating at the same restaurant, although in a secluded room. However, when the jurors were escorted through the cafeteria line by three bailiffs, some of them noticed the attorneys. The bailiffs were subsequently interrogated by the court about the incident. One of the bailiffs testified that a juror said, "What are they doing here?". He remembered no other statements, but expressed his conclusion that this and another juror "felt intimidated." The other bailiffs testified that some jurors felt the lawyers' presence at the restaurant was "in bad taste." After this testimony, the trial court found that no impropriety was intended and none had occurred. The court denied appellant's motion for a mistrial or for a voir dire examination of the jurors.

■ In urging reversal appellant cites the rule of State v. Mullen, 528 S.W.2d 517, 520 (Mo.App.1975) that "Where unpermitted communication or juror misconduct are [sic] established in a felony trial, the verdict is set aside unless the State sustains the burden of showing lack of improper influence...." We are not prepared to

hold that the mere casual observation of the attorneys from a distance in a public restaurant amounts to "unpermitted communication." Defense counsels' selection of a restaurant likely to be used by the jurors was appropriately described by the trial court as "bad judgment" and by jurors as "in bad taste." However, the incident fails to attain such magnitude as to warrant our finding an abuse of the trial court's discretion in denying the drastic remedy of mistrial. We note, as did the trial judge, that defense counsel on voir dire had solicited and obtained commitments from the jurors that they would not hold against the appellant any conduct of the attorneys. That further questioning of the jurors would have highlighted the otherwise trivial incident was reflected by defense counsel's response to the trial court's offer to advise the jury that no impropriety was intended. Counsel stated, "Frankly, my gut reaction now is to just leave it alone." An appellate court may overturn the denial of a motion for mistrial only when it finds a clear abuse of discretion. State v. McCall, 602 S.W.2d 702, 705 (Mo. App.1980). We find no such abuse here.

■ Next, appellant contends a miscarriage of justice resulted from the prosecuting attorney's questions to her about putting cat's blood on a sample of her husband's hair and telling fortunes from cards. No objection was made to this line of interrogation at trial nor was the matter included in appellant's motion for new trial. We are asked to consider the colloquy as "plain error", Rule 29.12(b). The record shows a single question about putting cat's blood with a sample of Ronald's hair, which appellant denied, and six questions relating to her use of "fortune cards." Appellant's argument that the jury inferred from these questions that she was a witch or a gypsy is rather fatuous. Although irrelevant to the case, this brief segment of cross-examination falls far short of the requisite "manifest injustice or miscarriage of justice"

1. Counsel on appeal was not appellant's counsel at trial.

which triggers our application of Rule 29.-12(b). *State v. Valentine,* 646 S.W.2d 729, 731 (Mo.1983). We deny appellant's second point.

Appellant's third point asserts error in the refusal to permit testimony that she suffered from "battered woman syndrome." On this point and at trial she contends the evidence was material and relevant to the issue of self-defense. Appellant offered the testimony of Dr. Wayne Stillings, a psychiatrist, and Dr. Lenore Walker, a psychologist. In an offer of proof made outside the jury's hearing, the doctors were questioned extensively regarding the psychological effect of her subjection to her husband's repeated abuse. Defense counsel offered this evidence to support her theory that hiring Bratcher to kill her husband was justified as a means of self-defense. Upon the State's objections, the court excluded the testimony. In delineating the bounds of self-defense, we have said:

> The elements of self-defense in a homicide case are the absence of aggression or provocation on the part of the defendant, a real or apparently real necessity to kill to save himself from an immediate danger of serious bodily injury or death, reasonable cause for belief in such necessity, and the defendant's doing all within his power consistent with personal safety to avoid the danger and the need to take life. *State v. Grier,* 609 S.W.2d 201, 203 (Mo.App.1980); *State v. Ivicsics,* 604 S.W.2d 773, 776 (Mo.App.1980).

*State v. McGowan,* 621 S.W.2d 557, 559 (Mo.App.1981).

 Tested by this standard, the evidence here falls woefully short of establishing an issue of justifiable self-defense. Appellant deliberately entered into the agreement with Bratcher to kill her husband. She brought Bratcher to her house on December 4 for the express purpose of killing Ronald the next day. This aggressive act set in motion the chain of events culminating in the slaying. No evidence showed the appellant was in any real, or apparently real, immediate danger of either death or serious bodily injury necessitating her husband's killing. She claimed she entered into the contract with Bratcher because she feared Ronald would blow up the house when she was in it. We do not discuss the reasonableness of her fear because the mere possibility that an event may happen in the future does not create the immediate danger underlying the right to kill in self-defense. Nor does appellant's description of the murder supply a sense of imminent peril. She described an argument with Ronald who made what could be considered a threat, but it was interrupted by a ringing telephone. As she started to leave the room, she heard Ronald answer the telephone; thus any immediate danger she perceived was dissipated. Moreover, no evidence supports a conclusion that the shooting was provoked by or was responsive to this verbal threat. Even if Bratcher had concealed himself in the basement with a loaded gun only to protect appellant, any fear from the oral threat does not justify shooting an unarmed man from a place of concealment. "The legal sufficiency of the evidence to submit justification by self-defense is for the court in the first instance." *State v. Grier, supra,* 609 S.W.2d at 203. The court did not err in ruling that appellant had failed to make a prima facie showing of the elements of self-defense. It follows that the court did not err in refusing to admit the expert testimony offered for the purpose of corroborating such a defense. "[T]he rejection of irrelevant testimony is a matter which rests within the discretion of the trial court...." *State v. Taylor,* 589 S.W.2d 302, 304–5 (Mo. banc 1979). In the absence of the abuse of this discretion, and we find no such abuse here, we may not interfere. *Id.*

 In her brief, appellant now contends the evidence was germane to her perception of the necessity, real or apparent, to kill to prevent death or serious bodily injury to herself. However, her perception is not the sole element of self de-

fense. "Something more than fear is required to justify such extreme conduct as the taking of another's life with a deadly weapon. Some affirmative action, gesture, or communication by the person feared indicating the immediacy of danger, the inability to avoid or avert it, and the necessity to use deadly force as a last resort must be present." *State v. Jackson*, 522 S.W.2d 317, 319 (Mo.App.1975). In the absence of evidence of immediate danger and of her failure to resort to less drastic means than killing to avert such danger as may have been perceived, appellant's perception as affected by the abuse she had sustained in the past is irrelevant.

■ At trial, defense counsel also argued that the expert testimony was relevant to appellant's mental state and intent. However, none of the testimony elicited from Dr. Stillings or Dr. Walker on the offer of proof addressed this issue. Counsel on appeal, recognizing this void, argues that the failure to interrogate the witnesses regarding the effect of appellant's mental disease, the battered woman syndrome, on her capacity to deliberate and premeditate constituted ineffective assistance of counsel. Counsel on appeal acknowledges that ineffective assistance of counsel is cognizable on direct appeal only in the rare instances in which the trial record sufficiently develops the facts necessary for meaningful review. *State v. Hobbs*, 612 S.W.2d 387, 388 (Mo.App.1981). In an effort to bolster the inadequate record, counsel has filed with this court a sworn statement of Dr. Stillings who opines that diminished mental capacity is an attribute of the battered woman syndrome and that, had he been asked, he would have testified appellant "would not be psychologically capable

of considering her actions in a full and complete manner." We are unable to consider this ex parte statement on this appeal in the absence of a fully adversarial presentation. The State has had no opportunity to cross-examine the witness on this issue nor to rebut his statement. While we desire finality in this matter, we are constrained to consign this issue to the more appropriate forum, a hearing on a motion to vacate sentence pursuant to Rule 27.26.[2]

■ Appellant's trial attorney filed a motion for new trial based on newly discovered evidence alleging that in his two pretrial interviews with Bratcher, he learned that Bratcher would corroborate appellant's testimony about abandonment of the conspiracy, but that he had been led to believe that Bratcher would refuse to testify at the trial.[3] Bratcher was produced at the hearing on the motion and was subjected to extensive direct and cross-examination. The trial court held that Bratcher's testimony was not credible and overruled the motion. The court could have reached the same decision for the reason that the evidence was not newly discovered and was merely cumulative, as shown on the face of the motion. *State v. Davis*, 505 S.W.2d 115, 117 (Mo.App.1973).

■ On appeal, appellant argues that the failure to subpoena Bratcher to testify at the trial demonstrates ineffective assistance of counsel. Because of the extensive testimony before the trial court, this point is sufficiently developed to allow resolution on this appeal. *State v. Battles*, 607 S.W.2d 723, 728 (Mo.App.1980); *State v. Davis*, 505 S.W.2d 115, 117 (Mo.App.1973).

*Davis* is particularly apropos where the court considered on direct appeal post-trial

---

2. We do not intend to indicate our opinion regarding the admissibility nor the weight to be given to testimony concerning the battered woman syndrome. Other jurisdictions which have considered the question on more fully developed records have reached diverse results. *See Annot; Admissibility of Expert or Opinion Testimony on Battered Wife or Battered Woman Syndrome*, 18 ALR 4th 1153 (1982). Interested parties may also refer to *Ibn-Tamos v. U.S*, 455 A.2d 893 (D.C.App.1983); *Hawthorne v. State*, 408 So.2d 801, 806 (Fla.App.1982); and *Buhrle v. State*, 627 P.2d 1374 (Wyo.1981) regarding the

scientific reliability of Dr. Walker's testimony and of the theory enunciated in her book on the subject. Our research has failed to disclose any case wherein such evidence has been offered in a non-confrontational setting, or where the actual killing is perpetrated not by the abused woman but by a hired killer.

3. Bratcher entered a plea of guilty to the murder charge and had been sentenced to life imprisonment.

testimony, presented as newly discovered evidence, on the question of ineffective assistance of counsel. Citing *McQueen v. State*, 475 S.W.2d 111 (Mo. banc 1971), the *Davis* court noted "the determinative factor in a finding of ineffective assistance of counsel was whether the defendant was prejudiced by the counsel's actions." *Davis* at p. 118. No prejudice can be found here because the proffered testimony of Bratcher, as well as the testimony of appellant, failed under the law to support the defense of withdrawal from the admitted conspiracy.

> To withdraw in the legal sense defendant must have done so in due time, he must have shown his confederates by acts or words that he disapproved or opposed the contemplated crime, and he must have done everything practicable to detach himself from the criminal enterprise and to prevent the consummation of the crime. *State v. Bailey*, 383 S.W.2d 731, 734 (Mo.1964); *State v. Denson*, 574 S.W.2d 445, 448 (Mo.App.1978). Once defendant set into motion the chain of events leading to Paula Campbell's death, he could not absolve himself from the consequences of his actions by simply running away from the scene of his crime. See *State v. Glover*, 330 Mo. 709, 50 S.W.2d 1049 (1932); *State v. Forsha*, 190 Mo. 296, 88 S.W. 746 (1905).

*State v. Baker*, 607 S.W.2d 153, 157 (Mo. banc 1980).

This principle has been codified in Section 562.041(3), RSMo 1978, wherein criminal responsibility for the acts of another is precluded by reason of withdrawal only when the co-conspirator "[b]efore the commission of the offense ... abandons his purpose and gives timely warning to law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense." Assuming, arguendo, the truth of Bratcher's testimony that appellant told him that she no longer wanted to go through with her husband's murder, the evidence would still be insufficient to support the affirmative defense of withdrawal. She permitted Bratcher to remain in the house armed with a weapon. She failed to disclose to her husband that Bratcher was concealed in the basement. She permitted Cash and Becker to leave the premises knowing that Bratcher had stated he would not carry out his agreement in the presence of others. She participated in the disposal of evidence of the crime, made a false missing person report to the police, and paid premiums on her husband's life insurance after his death. All of these acts are inconsistent with a "proper effort to prevent the commission of the offense" or "to detach [herself] from the criminal enterprise and to prevent the consummation of the crime." Viewing the evidence in the light most favorable to appellant, Bratcher's testimony fails to establish a defense of withdrawal. Therefore, appellant sustained no prejudice by reason of the failure of trial counsel to call Bratcher as a witness at the trial. Her present contention of ineffective assistance of counsel is without merit.

The judgment is affirmed.

SMITH and STEPHAN, JJ., concur.