**STATE of Missouri, Respondent,**

v.

**Lana Lee ANDERSON, Appellant.**

**No. WD 40412.**

Missouri Court of Appeals,
Western District.

Jan. 16, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 1990.

Application to Transfer Denied
April 17, 1990.

See also, 758 S.W.2d 500.

Robert B. Ramsey, St. Louis, for appellant.

William L. Webster, Atty. Gen., Ronald L. Jurgeson, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and KENNEDY and GAITAN, JJ.

LOWENSTEIN, Presiding Judge.

Appellant Lana Lee Anderson was convicted by a jury of first degree murder of her husband and was sentenced to life imprisonment, without possibility of parole. Anderson filed a motion under Rule 29.15 to vacate, set aside and/or correct the judgment and sentence. Following a hearing and denial of relief, she brought an additional appeal which was consolidated with the direct appeal from her conviction of first degree murder.

In her direct appeal, Anderson alleges prosecutorial misconduct, ineffective assistance of counsel, and abuse of trial court discretion in disallowing the issue of self-defense into the case by way of the battered spouse syndrome. In her Rule 29.15 appeal, Anderson alleges ineffective assistance of counsel in that counsel failed to interview and bring forth witnesses with knowledge helpful to her defense. Both judgments are affirmed.

As the sufficiency of the evidence is not challenged on this appeal, the following is a statement of facts in the light most favorable to the conviction: The strongest evidence supporting Anderson's conviction was the testimony of James Quick, a co-defendant in this case. He met the defendant Anderson in October 1986, at a time she was separated from her husband. They started dating and he eventually moved in with her. During this relationship, Quick was at the husband's trailer with Anderson when the husband returned. The husband proceeded to shoot Quick in the back with a shotgun. Soon after, Anderson moved back in with her husband.

In December 1986, Quick heard Anderson talk about having her husband killed. In January 1987, Anderson talked to several people about killing her husband, including Joe Corpier, another co-defendant. Quick testified that between February and March, he heard Anderson mention that Corpier was going to kill her husband.

On March 13, 1987, Quick and Corpier went to the trailer of Elaine Schultz, another co-defendant, where they discussed various plans for killing Anderson's husband. That evening Quick, Corpier, and Rick Miller, another co-defendant, went to Corpier's house and to bed around midnight. At 2:40 a.m. on March 14, 1987, the three drove to Anderson's trailer and noticed the defendant's car was gone. Quick testified "I told him to just forget it, that she obviously really didn't want it done because she wasn't there." Corpier said since they were out there, they were going to do it. Corpier and Miller went into the trailer

while Quick waited outside. Quick heard a gunshot, then all three went back to Corpier's house.

Additional evidence supporting the conviction included two other witnesses who heard Anderson discuss having her husband killed. Richard Liby testified Anderson offered him $10,000 from an insurance policy if he would kill her husband. Robert Thompson testified he had had a relationship with Anderson during her marriage and heard her mention having her husband killed.

Prior to trial, Anderson filed a notice that evidence of the Battered Spouse Syndrome would be offered. The state filed a Motion In Limine asking to restrict this evidence. The trial court sustained the state's motion "to the extent it seeks to exclude anyone from mentioning that defendant [Anderson] suffered from Battered Spouse or Battered Woman's Syndrome until such time as self-defense is injected into the case." However, the testimony would be allowed to show that Anderson did not have the required culpable mental state. Anderson was permitted to make a formal offer of proof.

Additional facts will be given *infra*, as needed.

■ Anderson's first point alleges the trial court erred in not granting a new trial due to the fact there was prosecutorial misconduct stemming from references to Anderson's sexual affairs and uncharged crimes. She claims this evidence is not relevant. There is included an ineffective assistance of counsel allegation due to defense counsels failure to object to this evidence.

Evidence is relevant if it logically tends to prove or disprove a fact in issue. *State v. Prewitt*, 714 S.W.2d 544, 551 (Mo.App. 1986). In a criminal proceeding, questions of relevancy will only be reviewed for abuse of discretion. *Id.*

Anderson complains there were at least sixty questions asked by the prosecuting attorney throughout trial centering on sexual issues going beyond the point of relevancy. These included 1) affairs with other men while she was still married; 2) nude photographs of her taken by her husband; 3) reference to a pair of panties owned by Anderson with a slit in the crotch; and 4) watching pornographic movies with Quick. Although toeing the line, the prosecutor did not cross it and therefore the decision of the trial court stands.

The fact that prior to the death of her husband Anderson was having sexual affairs with other men would tend to establish motive. *Prewitt*, at 551; *State v. Kurtz*, 564 S.W.2d 856, 858 (Mo. banc 1978). If Anderson's husband were dead, there would be no restraint on her extramarital lovelife. As to Anderson's panties and her watching pornographic movies, although testing the line of relevancy, "[w]ide latitude is generally allowed in the development of evidence of motive." *State v. Mallett*, 732 S.W.2d 527, 535 (Mo. banc 1987); *State v. Smith*, 772 S.W.2d 760, 764 (Mo.App.1989). There was no reversible error.

Anderson complains that during cross-examination she was repeatedly questioned about nude photographs of her taken by her husband. However, this issue was first addressed during her direct examination where she stated her husband forced her to be photographed in the nude. "The extent of cross-examination of an accused rests largely in the discretion of the trial court, and an appellate court is not to interfere unless that discretion is abused." *State v. McClintic*, 731 S.W.2d 853, 857 (Mo.App.1987). There was no abuse in this instance, although the prosecutor came perilously close to causing a reversal for the repeated attempts to show what the jury already knew about the defendant's habits and personal life. As able counsel for the defendant argued on appeal, it is difficult to assess the poison injected by prosecutorial overkill.

Anderson also complains of prosecutorial misconduct in bringing out the fact she had sexual relations with a sixteen year old boy, a crime in the state of Missouri. She argues evidence of uncharged crimes is inadmissible. This is true "unless [the] evidence is logically relevant to establish

the defendant's guilt of the crime charged." *Smith,* at 764. An exception exists when the evidence of uncharged crimes tends to establish motive. *Id.* As previously stated, sexual affairs with men other than her husband tends to establish Anderson's motive. *Prewitt,* at 551. Even with evidence on the subject of extra-marital escapades allowable in view of the motive for this crime, the prosecutor's motive and strategy must be questioned.

Consistent with the foregoing, Anderson's ineffective assistance of counsel allegation must also fail. She claims defense counsel was ineffective because he did not object to the above evidence and questioning. However, "[c]ounsel cannot be faulted for failing to seek relief to which movant was not entitled." *Forshee v. State,* 763 S.W.2d 352, 356 (Mo.App.1988). In addition, the failure to make an objection does not constitute ineffective assistance of counsel unless the evidence 1) was objectional; and 2) it resulted in a genuine deprivation of the right to a fair trial. *Johnson v. State,* 726 S.W.2d 889 (Mo.App. 1987). Anderson fails both prongs.

 For her second point Anderson asks for a reversal because the "trial court erred, abused its discretion and was clearly erroneous in its decision to disallow the defense of self-defense, and, in particular, by its refusal to allow appellant's expert psychologist to inject the issue of self-defense into the case through testimony of appellant's suffering from the battered wife syndrome...." Here the court ruled adversely to Anderson concerning an offer of proof by a Dr. Harlan. In Harlan's opinion Anderson was suffering all the symptoms from the "Battered Spouse Syndrome," and felt Anderson "perceived herself to be in danger of death or imminent serious physical injury."

To justify this point, Anderson argues as follows: the legislature enacted the Battered Spouse Law, § 563.033, RSMo Supp. 1988, which as pertinent reads:

1. Evidence that the actor was suffering from the battered spouse syndrome shall be admissible upon the issue of whether the actor lawfully acted in self-defense or defense of another.

By doing so, the argument goes, the Assembly in 1987 meant to change the case law as was embodied in *State v. Martin,* 666 S.W.2d 895 (Mo.App.1984). In *Martin* the wife hired a contract killer to do the deed for money received from insurance proceeds. She and the husband were separated, but she feared he was going to blow up the house when she was in it. *Id.* at 899. The appeals court made the following statements concerning the trial judge's refusal to allow in expert opinion on the "battered woman syndrome" or of self defense.

> The elements of self-defense in a homicide case are the absence of aggression or provocation on the part of the defendant, a real or apparently real necessity to kill to save himself from an immediate danger of serious bodily injury or death, reasonable cause for belief in such necessity, and the defendant's doing all within his power consistent with personal safety to avoid the danger and the need to take life.

> &ast; &ast; &ast; &ast; &ast; &ast;

> Tested by this standard, the evidence here falls woefully short of establishing an issue of justifiable self-defense. Appellant deliberately entered into the agreement with Bratcher to kill her husband.

> &ast; &ast; &ast; &ast; &ast; &ast;

> We do not discuss the reasonableness of her fear because the mere possibility that an event may happen in the future does not create the immediate danger underlying the right to kill in self-defense. Nor does appellant's description of the murder supply a sense of imminent peril.

> &ast; &ast; &ast; &ast; &ast; &ast;

> The legal sufficiency of the evidence to submit justification by self-defense is for the court in the first instance. (Citation omitted). The court did not err in ruling that appellant had failed to make a prima facie showing of the elements of self-defense. It follows that the court did not

err in refusing to admit the expert testimony offered for the purpose of corroborating such a defense. "[T]he rejection of irrelevant testimony is a matter which rests within the discretion of the trial court."

666 S.W.2d at 899.

Anderson's implied conclusion is § 566.033 compels admission of evidence of self-defense arising out of the battered spouse syndrome in a case where no prima facie showing of traditional self-defense has been made. This interpretation is rejected.

Section 566.033 specifically requires self-defense already be an issue in the case. Note, Missouri's New Law on "Battered Spouse Syndrome:" A Moral Victory, a Partial Solution, Vol. 33 St. Louis Law Journal, 227 (1988).

As in *State v. Clay*, 779 S.W.2d 673, 676–77 (Mo.App.1989), where the defendant shot her ex-husband's girlfriend, the facts of the killing here do not support a self-defense claim or use of the battered spouse syndrome. Anderson hired or lured the killers into the crime. There was no evidence of self-defense of assaults of the husband when he was shot. Anderson had been talking for over three months prior to the murder about how to have her husband killed, with payment to the assailants out of his insurance proceeds. In *State v. Klaus*, 730 S.W.2d 571, 575 (Mo.App.1987), where the defendant hit her ex-husband with a car and then attempted to stab him, the court stated: "It is hard to imagine a clearer case of intent to kill or cause serious physical injury under the meaning of those terms."

In the case at bar the defendant did not make a prima facia showing from the evidence of the elements of self-defense justifying the use of deadly force. *State v. Ford*, 491 S.W.2d 540, 542 (Mo.1973); *State v. Grier*, 609 S.W.2d 201, 203 (Mo.App. 1980). The literal reading of § 563.033 prohibits the battered spouse syndrome where the defendant has not been able to raise the issue of self-defense. This is consistent with the law in other states. In *People v. Minnis*, 118 Ill.App.3d 345, 74 Ill.Dec. 179, 187, 455 N.E.2d 209, 217 (Ill.App.1983), the court said:

It is true that in nearly all the reported cases the syndrome evidence has been utilized, if permitted, as a form of self-defense in a confrontational situation; *i.e.*, the battered woman kills her batterer during or immediately after an attack.

*Accord State v. Hodges*, 239 Kan. 63, 716 P.2d 563 (1986). The trial court did not abuse its discretion in excluding the expert testimony, *State v. Lint*, 657 S.W.2d 722, 725 (Mo.App.1983).

■ Anderson's third and final point alleges error in the denial of her Rule 29.15 motion stating defense counsel was ineffective in failing to interview and present the testimony of witnesses which were helpful to her defense.

Review of a denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. *Murray v. State*, 775 S.W.2d 89, 90 (Mo. banc 1989); *Childress v. State*, 778 S.W.2d 3, 5 (Mo. App.1989). Findings and conclusions are clearly erroneous only if after review of the entire record the court is left with a definite and firm impression that a mistake has been made. *Murray*, at 90; *Childress*, at 5. In order to prevail on a claim of ineffective assistance of counsel, a movant must establish that 1) her attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and 2) she was thereby prejudiced. *Murray*, at 90; *Henderson v. State*, 770 S.W.2d 422, 423 (Mo.App.1989). The movant has the burden of proving her grounds for relief by a preponderance of the evidence. Rule 29.15(h); *Childress*, at 5.

Anderson specifically mentions only two potential witnesses, Elaine Schultz and Les Hott. Schultz did not testify at either Anderson's hearing or trial, so there is nothing of substance in the record showing how this testimony was valuable to a viable defense. "Conjecture or speculation is not sufficient to establish the required prejudice." *Hogshooter v. State*, 681 S.W.2d 20, 21–22 (Mo.App.1984); *See also Johnson v. State*, 776 S.W.2d 456, 458 (Mo.App.1989);

*Johnson v. State*, 587 S.W.2d 622, 623 (Mo. App.1979).

Les Hott did testify at the Rule 29.15 hearing. He testified he was in the cell with Quick prior to Anderson's trial and that Quick said he shot Anderson's husband. Hott also said Quick told him of a code with the porchlights that indicated Anderson wanted to call off the killing. This testimony would have been offered to impeach the testimony of state's witness Quick. However, this is not enough for a finding of ineffective assistance of counsel—a decision not to call a witness defendant requested whose testimony would only impeach a state's witness is not sufficient to establish ineffective assistance of counsel. *Tate v. State*, 675 S.W.2d 89, 91 (Mo.App.1984); *State v. Harris*, 669 S.W.2d 579, 582 (Mo.App.1984). Moreover, a substantial amount of Hott's testimony would have been cumulative to the testimony of Frank Dean who did testify at trial. "Failure to produce cumulative evidence does not constitute ineffective assistance of counsel." *Henderson v. State*, 770 S.W.2d 422, 423 (Mo.App.1989); *Johnson v. State*, 776 S.W.2d 456, 458 (Mo.App.1989).

It should also be noted an attorney's choice of witnesses, and in turn a decision not to call a witness, is a matter of trial strategy which is virtually unchallengable and will generally not support a finding of ineffective assistance of counsel. *Childress*, at 6; *Henderson v. State*, 770 S.W.2d 422, 423 (Mo.App.1989); *Johnson*, 776 S.W.2d at 458.

Finally, Anderson claims counsel was ineffective because he failed to request a continuance at the time of trial, even though in November of 1987 prior to trial he had requested one. This allegation is without merit. During the Rule 29.15 hearing, counsel testified that at the time of trial he was prepared. The conclusion of the motion court that counsel was prepared at time of trial was not clearly erroneous. *Murray*, at 89–90.

The judgment is affirmed.