

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED109630 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | Cause No. 18SL-CR01141-01 |
| | ) | |
| TESIA AKINS, | ) | |
| | ) | Honorable Stanley J. Wallach |
| Appellant. | ) | |
| | ) | Filed: April 26, 2022 |
| | ) | |

### OPINION

Tesia Akins ("Defendant") appeals the trial court's judgment entered upon a jury verdict finding her guilty of second-degree murder and armed criminal action. Defendant's sole point on appeal contends the trial court erred in refusing to instruct the jury on self-defense. We affirm.

### I.      Factual and Procedural Background

Defendant was charged with second-degree murder and armed criminal action in connection with the death of her boyfriend, Jerome Robertson ("Victim"). The following evidence was adduced at trial:

Defendant and Kenta Jackson ("Jackson") were union members assisting union organizer Jeanina Jenkins ("Jenkins") in coordinating travel for a strike. Defendant was tasked with driving a passenger van across St. Louis and transporting union members to a hotel. While transporting the union members, Defendant picked up Victim, even though he was not a part of the union, and

1

as they were leaving the hotel they began arguing. Defendant pulled into a parking lot near the hotel and called Jenkins, screaming that Victim had spat on her and hit her. Defendant asked Jenkins to come meet her at the parking lot. Jenkins, Jackson, and three other union members drove to Defendant's location. When they arrived, Victim and Defendant were exiting the van. As Jenkins approached them, Defendant began shouting and cursing. At one point, Victim made an aggressive move towards Defendant, but someone stepped in between them. Victim then went to the van, retrieved Defendant's purse, and threw it on the roof of the van. Jackson told Victim to "walk away" and head towards a nearby bus stop for a ride home. Victim heeded Jackson's advice and left the parking lot. Defendant got into the driver's seat of her van, and Jenkins got into the passenger's seat. Everyone else left in another vehicle.

On their way back to the hotel, Defendant stated, "I hate him. I want to kill him. I hate him, I want to kill him." Defendant saw Victim walking on the shoulder of the road towards the bus stop. She accelerated, steered onto the shoulder, and struck Victim. Victim's head hit the windshield and he landed in a roadside ditch. Defendant continued driving down the road as Jenkins repeatedly asked Defendant to turn around and let her out of the van. Jenkins called Jackson and told her that "[Defendant] killed this man," referring to Victim. Jackson ordered Defendant to return to the hotel and she complied. After parking her van at the hotel, Jackson walked over to the scene and found Victim in the ditch. Jackson testified that Defendant returned shortly thereafter and, while attempting to get Victim up, Defendant repeatedly stated, "I'm sorry, I'm sorry, I snapped, I snapped." Victim died from his extensive blunt force injuries.

Defendant testified in her own defense. Defendant testified that, on her way to pick up a union member, Victim requested that Defendant drive back to the hotel. Defendant continued her route, which upset Victim, and he slapped her. Defendant acknowledged she hit Victim with the

2

van. Defendant stated that she was afraid of Victim because he had threatened to "slap the hell out of" her for not following his requests and "no matter what he was gonna put his hands on [her] again later that day."

Defendant submitted a self-defense jury instruction, which the trial court refused to give. The jury found Defendant guilty as charged. Defendant was sentenced to concurrent terms of imprisonment of fifteen years for second-degree murder and three years for armed criminal action.

This appeal follows.

## II.     Standard of Review

This Court reviews a trial court's decision to give a requested jury instruction *de novo*. *State v. Bruner*, 541 S.W.3d 529, 534 (Mo. banc 2018). The trial court must give a self-defense instruction when substantial evidence is adduced to support it, even if that evidence is inconsistent with the defendant's testimony. *Id.* "Substantial evidence is 'any theory of innocence … however improbable that theory may seem, so long as the most favorable construction of the evidence supports it.'" *State v. Barnett*, 577 S.W.3d 124, 128 (Mo. banc 2019) (quoting *State v. Kinard,* 245 S.W.2d 890, 893 (Mo. 1952)). In determining whether the trial court's refusal to submit an instruction on self-defense was error, the evidence is viewed in the light most favorable to the defendant. *Bruner*, 541 S.W.3d at 534.

## III.     Discussion

In her sole point on appeal, Defendant contends the trial court erred in refusing to instruct the jury on self-defense because substantial evidence was adduced to support the instruction. Specifically, Defendant argues that substantial evidence was presented showing that Defendant

was not the initial aggressor and deadly force was necessary to protect herself from imminent assault by Victim.

Pursuant to the self-defense statute, physical force may be used if the defendant: (1) was not the initial aggressor and (2) reasonably believes such force is necessary to defend herself from what she reasonably believes to be the use or imminent use of unlawful force by another person. *Id.* at 536*;* § 563.031.1.[1] Deadly force may be used when the defendant reasonably believes that such deadly force is necessary to protect herself against death, serious physical injury, or any forcible felony. § 563.031.2(1).[2] To justify the use of deadly force, "[s]ome affirmative action, gesture, or communication by the person feared indicating the immediacy of danger, the inability to avoid or avert it, and the necessity to use deadly force as a last resort must be present." *State v. Young,* 510 S.W.2d 732, 735 (Mo. App. 1974).[3]

First, no physical force was necessary for Defendant to protect herself because Defendant was not faced with imminent use of unlawful force by Victim. Although there was an altercation between Victim and Defendant in the van, Jenkins, Jackson, and the other union members intervened and separated Victim and Defendant. Defendant drove away in the passenger van with Jenkins, and Victim walked towards a nearby bus stop. After Defendant and Victim parted

---

[1] All references are to Mo. Rev. Stat. Cum. Supp. (2018).

[2] The proposed instruction in this case provided only that "a person is not permitted to use deadly force unless she reasonably believes that the use of deadly force is necessary to protect herself against death or serious physical injury." Therefore, we do not address Defendant's unpreserved and undeveloped argument on appeal that there was also substantial evidence that Victim was going to commit the forcible felony of assault.

[3] We note that this sentence, which originated in *Young,* has often been misstated in subsequent cases, replacing "inability" with "ability," as if a defendant was entitled to use self-defense if he had the *ability* to avoid the danger, rather than the *inability* to do so. In none of those cases did the court analyze the evidence as if this was actually the law and, in fact, they often correctly state elsewhere in those opinions that the defendant must have done everything in his power to avoid the danger and the need to take a life. *See, e.g., State v. Chambers*, 671 S.W.2d 781, 783 (Mo. banc 1984) (containing what seems to be the first mistaken reference to the "ability to avoid it"). This appears, therefore, to be only a scrivener's error, but one that ought not be repeated in future recitations of this proposition.

ways, there was no affirmative action, gesture, or communication by Victim indicating the *immediacy* of danger. *See id.* Thus, no force—let alone deadly force—was necessary for Defendant to protect herself.

Second, Defendant was not entitled to use deadly force in response to her fear of a future assault. Defendant contends that the "history of physical abuse, the threat to slap the hell out of her later, and the fact that [Victim] could have quickly walked over to the hotel parking lot" support a reasonable belief that deadly force was necessary. In doing so, Defendant is asking this Court to supply missing evidence by speculating that Victim was not walking towards the bus stop and, instead, was on his way to meet Defendant at the hotel parking lot to "slap" or "punch" her. This we cannot do. Our Court must view the evidence in the light most favorable to Defendant without supplying missing evidence or granting her unreasonable, speculative, or forced inferences. *See Bruner*, 541 S.W.3d at 538. The evidence shows that Defendant feared Victim would engage in some unlawful force in the future due to his threat that he would "slap" her "later that day." This is insufficient evidence to support her claim of self-defense because we cannot transform mere threats into justification for using deadly force. *Id.* at 544 n.2. Nor is deadly force a justified response to a fear of being punched or slapped. *Id.* at 538. Lastly, in the absence of evidence of immediate danger, Defendant's perception as affected by the abuse she had sustained in the past is irrelevant. *See generally State v. Martin*, 666 S.W.2d 895, 900 (Mo. App. E.D. 1984).

Defendant was not entitled to a self-defense instruction because the record does not contain substantial evidence supporting self-defense. Thus, the trial court did not err in refusing to submit the instruction.

Point denied.

## IV.    Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
Colleen Dolan, J.

Philip M. Hess, P. J., and
Angela T. Quigless, J., concur.