Robert Anthony MURRAY, Appellant,

v.

STATE of Missouri, Respondent.

No. 71062.

Supreme Court of Missouri,
En Banc.

Aug. 1, 1989.

Rehearing Denied Sept. 8, 1989.

Douglas Hartig, Stormy B. White, Asst. Public Defenders, Clayton, Mo., for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Movant was convicted by a jury of two counts of first degree murder for the execution-style killing of two robbery victims and was sentenced to death on both counts. The judgments were affirmed on appeal in *State v. Murray*, 744 S.W.2d 762 (Mo. banc 1988), which contains a recitation of the sordid facts surrounding the murders. On May 5, 1988, movant filed a motion for post-conviction relief pursuant to Rule 29.-15 alleging ineffective assistance of counsel, which was denied after an evidentiary hearing. We now consider the appeal of that judgment pursuant to our policy concerning 29.15 proceedings in which the underlying conviction resulted in imposition of the death penalty. We affirm.

In examining movant's claims of error, we are guided by the precept that our review is limited to a determination of whether the findings and conclusions of the

motion court are clearly erroneous. *Otis Day, et al., v. State*, 770 S.W.2d 692, 695–96 (Mo. banc 1989). Such findings and conclusions are deemed clearly erroneous only if, after review of the entire record, this Court is left with the definite and firm impression that a mistake has been made. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). In order to prevail on a claim of ineffective assistance of counsel, a movant must establish that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and that he was thereby prejudiced. *Sanders*, 738 S.W.2d at 857 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In reviewing such claims, a court may first examine either the quality of the attorney's performance or whether prejudice resulted from such performance and may dispose of the claim for failure to satisfy either prong. *Id.* To establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

■ Movant first asserts that the motion court clearly erred in denying relief on his claim that trial counsel was ineffective because she failed to move to strike the venire panel or adequately investigate "potential poisoning" of the jury after venireman Farroll reported that while walking to a parking garage following the first day of jury selection, a man, later identified as Venireman Alton Van Buren, engaged her in conversation. She assumed he had been a member of the array but on another venire panel[1], because he commented that if the case had gotten this far the defendant had to be guilty. The next morning Farroll reported the incident and was questioned out of the presence of the other veniremen. Movant's counsel actively participated in the questioning and astutely asked whether any other jurors were present when the comments were made. Venireman Farroll responded:

> No. By the time he [Van Buren] mentioned this, his opinion and his experiences, we were on the sidewalk far down the building, and we were the only two walking together to the garage at that point and rode up the elevator together to the same level. To the best of my knowledge[,] there would have been no one else within hearing.

Venireman Farroll also stated that the comments did not have an impact on her, although, after further reflection, she would not be able to impose the death penalty, and the court sustained the state's motion to strike her for cause. At this point, movant's counsel continued to pursue the matter by alertly requesting "since we don't know who this other person is that [Farroll] not be excused from the panel, and go through the rest of the voir dire, so she can point out to us who that person is." Prior to the initial jury instructions and opening statements, a record was made indicating defense counsel had investigated the incident further and venireman Farroll was able to identify venireman Van Buren, who had already been struck for cause, as the man who had made the comments to her.[2]

---

1. The veniremen were questioned in panels of twelve.

2. The record was as follows:

    THE COURT: ... [B]efore [venireman Farroll] left, in the company of the deputy sheriff assigned to this case, [she] waited downstairs to be able to identify the juror that had made those remarks to her. And she was not able to identify anybody. We assume on that basis on (sic) the process of elimination that the juror was probably already stricken.

    [MOVANT'S COUNSEL]: I think there was more information that came up subsequent to that.

    THE COURT: Okay. Then you have more information than I do.

    [MOVANT'S COUNSEL]: It was my—

    [PROSECUTING ATTORNEY]: She called over, Your Honor, and stated that he was over there, and was struck, and he was over there in the jury room and never came into this court.

    . . . .

This record refutes movant's claim that his attorney failed to adequately investigate the incident reported by venireman Farroll. From the time of the initial questioning of Farroll, counsel took appropriate remedial action, actively pursuing the matter even after Farroll was struck for cause. As a result of these efforts, counsel was able to ascertain not only the identity of the man who had made the comments, but that he, too, had been struck for cause and was apparently no longer in the courthouse. Furthermore, Farroll's testimony indicated that she alone heard the comments and provides no basis for a motion to strike the entire panel. Movant points to nothing in the record or the transcript of voir dire to substantiate his speculative assertion that the venire was "potentially poisoned." Indeed, the record indicates the venire was composed of fair and unbiased individuals. We cannot state that the motion court clearly erred in concluding movant's counsel acted "within the wide range of reasonable professional assistance." *Strickland,* 104 S.Ct. at 2065. Movant's first point on appeal is ruled against him.

■ Movant next asserts the motion court clearly erred in concluding counsel was not incompetent in failing to call movant's three children and their mother, Madeline Woods, as witnesses during the penalty phase of trial. Ms. Woods stated at the hearing she would have testified movant was with her on the night of the offenses, that she loved movant, and movant was a good father to their three children. When investigating the possibility of

having Ms. Woods testify, either as an alibi witness during the guilt phase of the trial or as a witness during the penalty stage, movant's counsel learned that persons Ms. Woods contended could corroborate movant's alibi admitted to counsel's investigator that movant had previously contacted them and conceded his involvement in the crimes.[3] Counsel testified at the motion hearing that she decided as a matter of trial strategy not to endorse or call Ms. Woods as a witness because of her concern the state would then be able to locate those other persons and their extremely damaging testimony. This also influenced counsel's decision to pursue a felony murder defense rather than one based upon alibi. Counsel further noted Ms. Wood's obvious bias would weaken her credibility as a witness, and she was uncertain on dates and times. Thus counsel concluded the risks involved outweighed the benefits of Ms. Woods's testimony. We find the motion court did not clearly err in concluding movant's counsel acted pursuant to a reasonable trial strategy in not calling Ms. Woods, and movant has failed to meet his heavy burden of overcoming the presumption that counsel was competent. *Sanders,* 738 S.W.2d at 857.[4]

■ Counsel stated that she did not consider attempting to have movant's children testify during the penalty stage; however, assuming *arguendo* that this amounted to a breach of counsel's professional duty, movant failed to establish any prejudice from the alleged deficiency. Movant's chil-

[MOVANT'S COUNSEL]: I believe she actually gave the juror number.
[PROSECUTING ATTORNEY]: Yes, but I forgot what it was. Do you have it down?
[MOVANT'S COUNSEL]: Alton Van Buren, I believe, was the juror who had been struck for cause.
THE COURT: Very well. Thank you. The record is complete.

**3.** When counsel informed movant about the information she had received, movant said he would "clear it up." Counsel is not ineffective for failing to present perjured testimony. *Allen v. State,* 518 S.W.2d 170 (Mo.App.1974).

**4.** We also note movant's total failure to establish prejudice from counsel's purported deficiencies. Other witnesses called by counsel during the

penalty phase, including family members, former employers, and friends, testified regarding movant's background and character, and in light of the strong evidence establishing movant's guilt and the existence of aggravating circumstances, Ms. Woods's testimony at the hearing provides no basis for finding a reasonable probability that the result of the proceedings would have been different had she been called at movant's trial.

Movant's argument that his brother's life sentence for participating in the same crimes establishes he was prejudiced by counsel's failure to call Ms. Woods and the children ignores crucial differences in the circumstances, including eyewitness testimony that movant shot the victims. *Murray,* 744 S.W.2d at 767.

dren were nine, seven, and six years old at the time of the hearing, and testified that they loved their father and wanted him to come home. The motion court, after observing the children testify at the hearing, found them incompetent as witnesses under § 491.060, RSMo 1986, and pointed out they would have been less competent at the time of trial, when they would have been between the ages of four and six. Thus movant failed to establish that the children would have been competent if counsel had sought to call them as witnesses.[5] The motion court did not clearly err in denying movant relief on this claim of ineffective assistance.

 Finally, movant contends that counsel was ineffective for failing to object to submission of the aggravating circumstance that the murder was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind." § 565.032.2(7), RSMo 1986. The record indicates that counsel raised a general written objection to the instruction and objected orally during trial; however, assuming *arguendo* that counsel's objections were insufficient, we find no prejudice from the alleged inadequacy of counsel. On direct appeal we found sufficient evidence to support the instruction, noting that the victims were shot execution-style after being held hostage for approximately three hours, during which time they were bound, gagged, and beaten. Movant and his accomplices stabbed knives into the floor directly beside the victims, and, while the victims were helplessly bound, sexually assaulted two women who had also been with the victims in the house when the intruders arrived. Thus the evidence indicated that the victims were subjected to serious physical and emotional abuse and that movant's actions were in callous disregard for the sanctity of human life, *State v. Griffin*, 756 S.W.2d 475, 489–90 (Mo. banc 1988), and under these circumstances the depravity of mind instruction is not unconstitutionally vague. *Jones v. State*, 767 S.W.2d 41, 45 (Mo. banc 1989). The motion court did not clearly err in concluding that movant was not prejudiced by counsel's purported failure to object to the instruction.

The judgment is affirmed.

All concur.

---

**5.** We note also that "sympathy is not a proper factor for the jury to consider in reaching its decision as to punishment," *State v. Clemmons,* 753 S.W.2d 901, 910 (Mo. banc 1988), and the record suggests that the children's testimony would have been used merely to gain sympathy.