767 F.Supp. 975 (1991)
Robert Anthony MURRAY, Petitioner,
v.
Paul DELO, Respondent.
No. 90-0370C(3).
United States District Court, E.D. Missouri, E.D.
April 8, 1991.
*976 *977 Charles M. Shaw, Clayton, Mo., for petitioner.
Jared R. Cone and Ronald L. Jurgeson, Asst. Attys. Gen., Jefferson City, Mo., for respondent.

ORDER
HUNGATE, District Judge.
This matter is before the Court after a hearing on the merits of some of the claims presented to this Court in petitioner's second amended petition for writ of habeas corpus.
On December 12, 1986, petitioner was convicted of two counts of murder in the first degree in the 1985 deaths of Jeffrey Jackson and Craig Stewart. The jury recommended the death penalty on both counts, and petitioner was sentenced accordingly. On direct appeal, the Missouri Supreme Court affirmed the convictions and sentence. State v. Murray, 744 S.W.2d 762 (Mo. banc), cert. denied, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988). Thereafter, petitioner filed in state court a motion to set aside or vacate judgment and sentence pursuant to Mo.S.Ct.R. 29.15, which was denied after an evidentiary hearing. The Supreme Court of Missouri affirmed that ruling. Murray v. State, 775 S.W.2d 89 (Mo. banc 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 1171, 107 L.Ed.2d 1073 (1990).
On March 1, 1990, petitioner filed in this Court his original pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner's appointed counsel subsequently *978 filed amendments to the original petition, as well as a second amended petition.
On January 9, 1991, this Court entered an order stating in part that "the ineffectiveness of counsel in petitioner's post-conviction proceedings may not constitute `cause' to overcome a procedural bar." As pointed out to the Court by the parties, this statement is in contrast with the prevailing law in the Eighth Circuit, as stated in Simmons v. Lockhart, 915 F.2d 372 (8th Cir.1990). Simmons states that ineffective assistance of post-conviction counsel can be "cause" for purposes of lifting a procedural bar. Id. at 376. The Court is compelled to follow this precedent and will vacate its January 9, 1991, order only to the extent that it states that ineffective assistance of post-conviction counsel cannot constitute cause to overcome a procedural bar. Nonetheless, as discussed below, even if petitioner could establish cause by demonstrating that his post-conviction counsel was ineffective in failing to raise the claims in petitioner's allegations numbered 14, 16, 19, and 21-28, the Court finds that petitioner cannot demonstrate actual prejudice by this failure as required under Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Accordingly, the Court still finds that petitioner's grounds 14, 16, 19, and 21-28 are procedurally barred.
In allegation 14, petitioner alleges that the court erred in submitting Missouri Approved Instruction Criminal 2d ("MAI-CR2d") 13.44 which impermissibly limited the jurors' consideration of mitigating evidence contrary to Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). Furthermore, petitioner asserts that the submission of MAI-CR2d 13.46 did not cure this defect. See McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227, 1231, 108 L.Ed.2d 369 (1990).
The relevant instructions submitted to the jury read as follows:
Instruction No. 11
As to Count I, if you decide that one or more sufficient aggravating circumstances exist to warrant the imposition of death, as submitted in Instruction No. 14, you must then determine whether one or more mitigating circumstances exist which outweigh the aggravating circumstance or circumstances so found to exist. In deciding that question, you may consider all of the evidence relating to the murder of Jeffrey Jackson.
You may also consider:
1. Whether the defendant has no significant history of prior criminal activity.
2. Whether the defendant was an accomplice in the murder of Jeffrey Jackson and whether his participation was relatively minor.
3. Whether the defendant acted under extreme duress or under substantial domination of another person.
You may also consider any circumstances which you find from the evidence in mitigation of punishment.
If you unanimously find that one or more mitigating circumstances exist sufficient to outweigh the aggravating circumstances found by you to exist, then, on Count I you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole.
Instruction No. 12
As to Count I, you are not compelled to fix death as the punishment even if you do not find the existence of one or more mitigating circumstances sufficient to outweigh all the aggravating circumstance or all the circumstances which you find to exist. You must consider all the circumstances in deciding whether to assess and declare the punishment at death. Whether that is to be your final decision rests with you.
Mills requires that a juror not be precluded from considering any mitigating evidence in determining the appropriate sentence to be imposed. 486 U.S. at 384, 108 S.Ct. at 1870.
The Court finds that the instructions submitted in this case are distinguishable from those in Mills and McKoy and do not run afoul of the constitutional principles set *979 forth therein. Specifically, the jurors in petitioner's case were not submitted a verdict form requiring a designation of each mitigating circumstance found unanimously by the jury. Cf. Mills, 486 U.S. at 387, 108 S.Ct. at 1871-72; McKoy, 110 S.Ct. at 1230. Thus, petitioner cannot demonstrate that post-conviction counsel's failure to raise this claim resulted in actual prejudice.
Petitioner's allegation 16 states that the trial court was without jurisdiction to consider petitioner's criminal case because the indictment does not comply with Missouri's statutory language regarding capital murder. Petitioner states that the language of the indictment more closely resembled the statutory language for murder first-degree.
Petitioner was tried and convicted of murder in the first-degree, not capital murder. Thus, as admitted by petitioner, the language of the indictment was sufficient for this charge. Therefore, petitioner has not demonstrated actual prejudice from post-conviction counsel's failure to raise this claim.
In allegation 19, petitioner alleges that he received ineffective assistance of counsel because trial counsel failed to object to the state's questioning of Officer Robert Planthold about statements made to him by Claudia Hennings.
This issue, framed as one of trial court error, was presented to the Missouri Supreme Court on direct appeal. The Missouri Supreme Court held that the testimony was relevant and admissible under Missouri law. State v. Murray, 744 S.W.2d at 772-73. Thus, petitioner has failed to show how counsel's failure to raise this issue at the post-conviction proceeding resulted in actual prejudice.
In allegation 21, petitioner states that trial counsel was ineffective in failing to take measures to prohibit evidence which had not been furnished through discovery. Specifically, petitioner asserts that counsel failed to ensure that notes and memoranda prepared by investigating officers that the state claimed had been destroyed were not introduced into evidence.
Once again, the Court finds that petitioner has not demonstrated actual prejudice from his post-conviction counsel's failure to raise this claim. Petitioner has not alleged that the notes were not destroyed or that the notes contained any exculpatory information that would have been beneficial to the petitioner. Nor has petitioner demonstrated any bad faith on the part of law enforcement officers in destroying their notes. See Sargent v. Armontrout, 841 F.2d 220, 224-25 (8th Cir.1988).
As allegation 22, petitioner alleges that defense counsel failed to object to the testimony of the state's witness, Claudia Hennings, that the two victims of the homicide were taken into a back room and "tortured." Petitioner states that this testimony calls for speculation and was inflammatory and highly prejudicial.
The Court finds that this statement certainly was within the province of the witness. As stated by the Missouri Supreme Court:
There is sufficient evidence in this case for a jury to believe that both physical and psychological torture was inflicted upon the murder victims. Evidence that Jackson and Stewart were bound and gagged and then beaten before being killed was unchallenged, as was evidence that the defendant and his accomplices stabbed knives into the floor directly beside the men. There is evidence that the murder victims, as well as Hennings and Nutall, were subjected to prolonged terror....
State v. Murray, 744 S.W.2d at 776. Accordingly, petitioner has not demonstrated actual prejudice with respect to this claim.
In allegation 23, petitioner alleges that trial counsel failed to object to the testimony of Christopher Jay Hyman, a paramedic who responded to the scene of the murder. According to petitioner, Hyman testified about the nature of the wounds to the victims without a proper evidentiary foundation or qualification.
As noted by the respondent, petitioner has not asserted that the evidence itself *980 was inadmissible or that a proper foundation or qualification could not have been made.
This Court does not find that actual prejudice resulted from failing to raise this claim during post-conviction proceedings.
In petitioner's second amended petition, two claims are labeled ground 24. With respect to the first one, petitioner alleges that he was denied a fair trial because of the state's questioning of witness Hyman as to the emotional state of Gladys Nutall. Petitioner asserts that this testimony called for speculation on the part of Hyman and served to bolster the testimony of Gladys Nutall.
The trial transcript reveals the following discourse between Hyman and the prosecutor:
Q. Okay. What did you observe when you got there?
A. We hadas I recall, there were three people to be considered. There were two with gun shot wounds lying on the floor, tied up; and one had his mouth gagged. One had his face and a lot of clothing around it. The one my partner worked on, I believe, actually had a gag tied around. And there was a woman who was fairly upset back in one of the rooms, not the same room as the two gun shot victims.
Q. All right. Do you recall whether or not that woman wasor was she ever identified to you?
A. I think that we were told later, but I don't recall off hand, and I don't think I can identify her.
Q. Would you say she was upset? How would you characterize, having had medical training, having hadhow would you characterize her?
MS. GILBERT: Objection, Your Honor, calls for speculation and that it's irrelevant.
THE COURT: Sustained to the use of the word "characterize."
Q. (Mr. Worzycki) What did you observe about her that night?
A. It's hard to actually define a term like distressed but, you know, ifwhen something very frightening happens, you have a person is frightened, and I don't know that I could say panicky. It's been quite some time, but it seems to me just moderate state of distress. That's not a very specific term.
Q. At the time that you saw this lady, was she crying?
A. I don't recall.
Q. All right. Was she able to talk coherently to you?
A. I think so.
Q. Okay. Did she appear to you to be extremely nervous?
MS. GILBERT: Objection, Your Honor. He is leading his witness.
THE COURT: Sustained.
Q. (Mr. Worzycki) What else can you tell us about her condition?
A. As I recall, I don't believe she had any real medical problems, any severe cuts or bruises or anything, and she did not wish to be treated.
Hyman merely was describing the circumstances at the residence when he arrived. The petitioner has not demonstrated Hyman's testimony bolstered the testimony of Nutall or prejudiced the defendant in any other way. Thus, post-conviction counsel's failure to raise this claim did not result in actual prejudice to the petitioner.
As his second ground 24, petitioner asserts that the state misstated the law in the penalty phase of voir dire by instructing the jury that their duty was to weigh the mitigating and aggravating circumstances of the case and balance the two.
As stated above, this Court finds that the jury was properly instructed on the penalty phase of the case. Moreover, control of the voir dire is in the sound discretion of the trial court. See State v. Murray, 744 S.W.2d at 770. Thus, petitioner has not demonstrated actual prejudice by failing to raise this claim in the state courts.
With respect to ground 25, petitioner states that the trial court erred in failing to strike for cause juror number 78, Mary Donnelly, who stated that after finding the defendant guilty of cool, deliberate, and *981 premeditated murder, death was the only punishment she would consider.
Venireperson Donnelly did not serve on the final jury which convicted petitioner. Thus, the only possible impact of the alleged error on petitioner was that he had to use one of his peremptory challenges to remove her. The loss of a peremptory challenge does not constitute a violation of the constitutional right to a fair trial. Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988). Thus, petitioner cannot demonstrate actual prejudice relating to this claim.
Petitioner's allegation 26 challenges the sufficiency of the indictment. Petitioner alleges that the indictment on its face does not conform to the statutory language under which the defendant was charged.
Again, the Court finds petitioner cannot demonstrate actual prejudice for failing to raise this claim in state court. The indictment used to charge the petitioner substantially tracks the format approved by the Missouri Supreme Court and, therefore, was proper. Mo.S.Ct.R. 23.01(e).
In ground 27, petitioner states that defense counsel failed to object to remarks made by the prosecutor which inferred that this case was other than a "normal murder situation," which prejudiced the petitioner and inflamed the jury.
Although petitioner does not point the Court to the actual portion of the prosecutor's argument to which he objects, the Court notes that there was substantial evidence in this case against the petitioner. It is appropriate for counsel in his or her argument to assist the jury in analyzing and applying the evidence. The Court does not find that there was actual prejudice sufficient to overcome a procedural bar where the evidence in the case supported any inference by counsel that this case was not a normal murder situation.
In ground 28, petitioner asserts that the state personalized closing argument, and petitioner's trial counsel failed to object to these remarks which were highly prejudicial and inflammatory. Again, the Court finds that petitioner cannot demonstrate actual prejudice resulted from post-conviction counsel's failure to raise this claim.
Moreover, the Court finds there was overwhelming evidence in the case against the petitioner. Thus, the burden of demonstrating actual prejudice is a difficult one which petitioner has not met.
Accordingly, the Court finds that petitioner is procedurally barred from asserting grounds 14, 16, 19, and 21-28. This Court previously found petitioner's ground 2 also was procedurally barred.
The Court will now consider the merits of petitioner's remaining claims. In particular, petitioner alleges that trial counsel was ineffective in (1) failing to present available mitigating evidence; (2) not moving to strike the venire panel and not ascertaining the extent of potential poisoning of the jury after the trial court received information that a venireperson had communicated inflammatory and prejudicial information concerning the petitioner's guilt; and (3) failing to object to the aggravating circumstance instruction concerning depravity of the mind, read by the trial court to the jury.
In addition, petitioner alleges that the trial court erred in (1) failing to remove for cause twelve venirepersons and sustaining the state's motion for cause with respect to two venirepersons; (2) failing to suppress unconstitutionally obtained evidence; (3) excluding petitioner's family members from the courtroom during trial; (4) failing to exclude photographs depicting the bodies of the victims; (5) permitting the state to introduce into evidence a police officer's testimony about statements made by witnesses who also testified at trial; (6) defining reasonable doubt for the jury as "doubt based upon reason and common sense," and defining burden of proof as "proof that leaves you firmly convinced of defendant's guilt;" (7) permitting the state to make an opening statement during the penalty phase of the trial where the state did not present any evidence; and (8) denying defendant's request for a jury instruction on conventional second-degree murder.
*982 In construing the constitutional requirement for effective assistance of counsel, the "benchmark ... must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The Court determines whether counsel's performance was deficient and, if so, whether the deficient performance prejudiced the defense. Id. at 687, 104 S.Ct. at 2064. In analyzing counsel's performance, the Court must determine whether, under all the circumstances, the "identified acts or omissions were outside the range of professionally competent assistance." Id. at 690, 104 S.Ct. at 2066. This review is highly deferential for there is a strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance; that is, the petitioner must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, 104 S.Ct. at 2065. With respect to the duty to investigate, the Supreme Court stated:
[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
Id. at 691, 104 S.Ct. at 2066.
A deficient performance alone is insufficient to find counsel was ineffective. The Court must also find prejudice resulted from such performance. To establish the prejudice element, petitioner must show
there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.... When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.
Id. at 694, 695, 104 S.Ct. at 2068, 2069. In making this determination, the Court "must consider the totality of the evidence before the judge or jury." Id. at 695, 104 S.Ct. at 2069.
Petitioner alleges that his trial counsel was ineffective because she failed to present available mitigating evidence at the sentencing phase of petitioner's trial. Specifically, trial counsel did not call petitioner's wife and children to testify.
The Supreme Court of Missouri considered this claim and stated:
When investigating the possibility of having Ms. Woods [petitioner's wife] testify, either as an alibi witness during the guilt phase of the trial or as a witness during the penalty stage, [petitioner's] counsel learned that persons Ms. Woods contended could corroborate [petitioner's] alibi admitted to counsel's investigator that [petitioner] had previously contacted them and conceded his involvement in the crimes.3
* * * * * *
3 When counsel informed [petitioner] about the information she had received, [petitioner] said he would "clear it up." Counsel is not ineffective for failing to present perjured testimony. Allen v. State, 518 S.W.2d 170 (Mo.App. 1974).
Counsel testified at the motion hearing that she decided as a matter of trial strategy not to endorse or call Ms. Woods as a witness because of her concern the state would then be able to locate those other persons and their extremely damaging testimony.
* * * * * *
Counsel stated that she did not consider attempting to have [petitioner's] children testify during the penalty stage; however, assuming arguendo that this amounted to a breach of counsel's professional duty, [petitioner] failed to establish any prejudice from the alleged deficiency. [Petitioner's] children were nine, seven, and six years old at the time of the hearing, and testified that they loved their father and wanted him to *983 come home. The motion court, after observing the children testify at the hearing, found them incompetent as witnesses under § 491.060, RSMo 1986, and pointed out they would have been less competent at the time of trial, when they would have been between the ages of four and six.
Murray v. State, 775 S.W.2d at 91-92.
The above factual findings underlying counsel's performance by the state court are entitled to a presumption of correctness in the related federal habeas proceeding. 28 U.S.C. § 2254(d); Patton v. Yount, 467 U.S. 1025, 1036-38, 104 S.Ct. 2885, 2891-92, 81 L.Ed.2d 847 (1984). While such a presumption attaches to any facts underlying an ineffective assistance of counsel claim, it does not apply to the state court's ultimate conclusion about whether or not petitioner's counsel rendered effective assistance. Strickland, 466 U.S. at 698, 104 S.Ct. at 2070. Petitioner does not contend any circumstance precludes the application of the presumption of correctness, and this Court finds the state courts' findings supported by the record. Upon careful consideration of the record, the Court finds reasonable trial counsel's conduct in not calling petitioner's wife and children to testify. Trial counsel decided as a matter of strategy not to have petitioner's wife testify due to concerns about perjury and credibility. Additionally, trial counsel did not err in not calling the petitioner's young children to testify as the record suggests that the testimony would have been used merely to gain sympathy. As the Supreme Court of Missouri noted, "sympathy is not a proper factor for the jury to consider in reaching its decision as to punishment." State v. Clemmons, 753 S.W.2d 901, 910 (Mo. banc), cert. denied, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). Since the Court has not found petitioner's trial counsel's performance deficient with respect to this claim, the Court need not and will not address the prejudice prong of the Strickland test for constitutionally ineffective assistance of counsel.
Petitioner next alleges that trial counsel was ineffective in not moving to strike the venire panel and not ascertaining the extent of potential poisoning of the sentencing jury after the court received information that a venireperson had communicated inflammatory and prejudicial information concerning petitioner's guilt.[1]
The record reveals that venireperson Farroll reported that, following the first day of the sentencing jury selection, another venireperson, later identified as Van Buren, made statements to Farroll about petitioner's guilt and the length of penalty to be imposed. Farroll reported the incident the following day and was questioned out of the presence of the other venirepersons. The Supreme Court of Missouri found that:
[Petitioner's] counsel actively participated in the questioning and astutely asked whether any other jurors were present when the comments were made. Venireman Farroll responded:
No. By the time he [Van Buren] mentioned this, his opinion and his experiences, we were on the sidewalk far down the building, and we were the only two walking together to the garage at that point and rode up the elevator together to the same level. To the best of my knowledge[,] there would have been no one else within hearing.
Venireman Farroll also stated that the comments did not have an impact on her, although after further reflection, she would not be able to impose the death penalty, and the court sustained the state's motion to strike her for cause. At this point, [petitioner's] counsel continued to pursue the matter by alertly requesting "since we don't know who this other person is that [Farroll] not be *984 excused from the panel, and go through the rest of the voir dire, so she can point out to us who that person is." Prior to the initial jury instructions and opening statements, a record was made indicating defense counsel had investigated the incident further and venireman Farroll was able to identify venireman Van Buren, who had already been struck for cause, as the man who had made the comments to her.
Murray v. State, 775 S.W.2d at 90. Again, the factual findings of the Supreme Court of Missouri are entitled to the presumption of correctness established in 28 U.S.C. § 2254(d), and petitioner does not contend any circumstance precludes the application of the presumption of correctness. The Court finds the state court's findings are supported by the record. Petitioner's trial counsel actively pursued the matter and Farroll indicated that she alone heard Van Buren's comments. Thus, there is no indication that the venire panel was "poisoned" or biased against petitioner. Since the Court has not found trial counsel's performance deficient with respect to this claim, the Court need not address the prejudice prong of the Strickland test.
Petitioner also alleges that trial counsel was ineffective in not objecting to the trial court submitting to the jury the aggravating circumstance that the murders were outrageously or wantonly violent and that they involved torture or depravity of mind. Specifically, petitioner contends that this aggravating circumstance is overbroad and vague and permits the death penalty to be imposed in an arbitrary and capricious manner.[2]
With respect to this matter, the appellate court stated:
[T]he Court finds substantial evidence to support the jury's finding of the existence of the three statutory aggravating circumstances which were submitted with respect to each murder. The evidence that Jackson and Stewart were both taken into the kitchen by the [petitioner] and his accomplices shortly before their lifeless bodies were found there leaves no doubt that each of the murders was committed while the killer was engaged in the commission of another unlawful homicide. The jury was justified in finding that the murders were committed while the [petitioner] was engaged in the perpetration or in the attempt to perpetrate a robbery because there was evidence that the [petitioner] and his accomplices took Jackson's and Stewart's wallets and Hennings' and Nutall's purses; that the assailants ransacked the apartment while asking for money and guns; that the assailants, after asking if Tracy Adams had any guns or money with him, waited three hours for him to arrive; and that the assailants, while beating Jackson and Stewart immediately before killing them, told them "this ain't enough."
State v. Murray, 744 S.W.2d at 775.
Moreover, in affirming the circuit court's denial of petitioner's post-conviction motion, the Supreme Court of Missouri found that:
The record indicates that counsel raised a general written objection to the instruction and objected orally during trial; however, assuming arguendo that counsel's objections were insufficient, we find no prejudice from the alleged inadequacy of counsel. On direct appeal we found sufficient evidence to support the instruction, noting that the victims were shot execution-style after being held hostage for approximately three hours, during which time they were bound, gagged, and beaten. [Petitioner] and his accomplices stabbed knives into the floor directly beside the victims, and, while the victims were helplessly bound, sexually assaulted two women who had also been with the victims in the house when the intruders arrived. Thus the evidence indicated that the victims were subjected to serious physical and emotional abuse *985 and that [petitioner's] actions were in callous disregard for the sanctity of human life, State v. Griffin, 756 S.W.2d 475, 489-90 (Mo. banc 1988), and under these circumstances the depravity of mind instruction is not unconstitutionally vague. Jones v. State, 767 S.W.2d 41, 45 (Mo. banc 1989).
Murray v. State, 775 S.W.2d at 92; see also Mercer v. Armontrout, 864 F.2d 1429, 1435 (8th Cir.1988) (stating that a similar instruction did not undermine the accuracy of the sentencing determination). Even if the instruction was in error, the jury found two additional aggravating circumstances, apart from the alleged erroneous one.
Upon careful consideration of the record, the Court finds that trial counsel was not ineffective in failing to object to the challenged aggravating circumstance presented to the jury. The record reflects sufficient evidence for the jury to believe that the victims suffered both physical and psychological torture. Thus, the aggravating circumstance referring to depravity of mind was properly submitted in this case. See Smith v. Armontrout, 888 F.2d 530, 538-39 (8th Cir.1989). Again, since the Court finds trial counsel's performance was not deficient, the Court will not address the prejudice prong of the Strickland test.
Petitioner's next two claims allege that the trial court erred in failing to remove for cause twelve venirepersons, and in sustaining the state's motion to strike for cause two venirepersons. Specifically, petitioner alleges that the trial court failed to strike for cause venirepersons Carolyn Artega, number 32; Lillian Nicolai, number 252; Victoria Alsup, number 25; David Fisher, number 142; Elizabeth Formenti, number 153; Elbert White, number 389; Norma Munsell, number 231; Eve Ebert, number 88; Roselta Brown, number 330; Robert Bianco, number 46; Frank Landish, number 200; and Richard Pelleguini, number 277. Petitioner contends that the above-mentioned venirepersons indicated that they would impose the death penalty if the state proved petitioner guilty of murder first-degree, with the state having to prove aggravating circumstances. Petitioner also asserts that venirepersons Lee Evans, number 112, and Sam Allen, number 128, were wrongly struck for cause when they indicated that, despite the fact that they could impose the death penalty, they did not think it appropriate under all the circumstances.
The standard for determining when a prospective juror may be excluded for cause is "whether the juror's views would `prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath.'" Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (citing Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)). This standard does not require that a juror's bias be proved with "unmistakable clarity." Id. Despite an ambiguous record, "there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.... [D]eference must be paid to the trial judge who sees and hears the juror." Id. at 425-26, 105 S.Ct. at 853. Retention of a single juror in violation of this standard requires a reversal of the imposition of the death penalty. Davis v. Georgia, 429 U.S. 122, 123, 97 S.Ct. 399, 400, 50 L.Ed.2d 339 (1976). The qualifications of a prospective juror are determined based on the entire voir dire examination. State v. Smith, 649 S.W.2d 417, 425-26 (Mo. banc), cert. denied, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).
Initially, the record reflects that venireperson Bianco was stricken for cause at petitioner's request. Moreover, venirepersons Nicolai, Formenti, Landish, and Pelleguini did not serve on the jury and were not removed by a peremptory challenge of the petitioner. Thus, any error by the trial court could not have impacted petitioner.
With respect to venireperson Ebert, the trial transcript reveals the following discourse between Ms. Ebert and the prosecuting attorney:
Mr. Worzycki: Okay. How do you feel about the death penalty?

*986 Juror No. 88: I think it's necessary for certain crimes.
Mr. Worzycki: ... [C]an you consider giving him life with no parole, and also can you consider giving him the death penalty?
Juror No. 88: Yes.
Mr. Worzycki: Okay. By considering it, can you, with the other eleven jurors, sign a verdict either of life with no parole or death?
Juror No. 88: Yes.
Mr. Worzycki: Okay. Thank you.
When pressed by defense counsel on her feeling about the death penalty, Ms. Ebert stated she thought a juror should consider both options. Based on this record, the Supreme Court of Missouri found that venireperson Ebert "unequivocally stated that [she] could consider both death and life sentences." State v. Murray, 744 S.W.2d at 768-69.
With respect to venirepersons Artega, Alsup, Fisher, White, Munsell, and Brown, the Supreme Court of Missouri found the following:
All the other ... challenged venirepersons initially stated that they could consider the full range of punishment. Under examination by defense counsel, however, each of the eleven at least arguably retreated from their earlier stand. Some of these venirepersons directly stated to defense counsel that they could consider only the death penalty. In the case of one of these eleven venirepersons, the defense counsel, seeking to resolve the inconsistency in the responses, reiterated that the jury would be instructed that the penalty for first-degree murder was either death or life imprisonment. After being reminded of the law the jury was required to follow, this venireperson stated that she would be able to consider both alternative punishments. In the cases of the other ten venirepersons at issue here, the court, recognizing that their answers were inconsistent, and that they were becoming confused, broke into the questioning and explained as impartially as possible the duty the jurors would have to follow the court's instructions and to consider both the alternative punishments provided for first-degree murder. The court then asked the venirepersons if they could follow the instructions in this case and consider both alternative punishments. Each of the ten venirepersons said he or she could.
State v. Murray, 744 S.W.2d at 769. The record supports this factual determination.
Based on the entire voir dire examination, the Court finds that the trial court did not err in failing to remove the above-named venirepersons.
Venirepersons Evans and Allen were struck for cause. The Supreme Court of Missouri found that, although Evans and Allen initially were equivocal about whether they could consider both life and death sentences, each finally answered that he could not consider the death penalty. Id. at 768. The Supreme Court determined that the trial court was warranted in relying on the venirepersons' final answers. Id. This Court agrees and finds that the exclusion of Allen and Evans for cause was permissible because each indicated an inability to follow the law.
Next, in ground 4 of his petition, petitioner alleges that the trial court failed to suppress unconstitutionally obtained evidence. This ground was presented in state court as a fourth amendment claim and will be addressed on that basis.
A state prisoner may not be granted federal habeas corpus relief on a claim that evidence presented at trial was obtained in violation of the fourth amendment where the state has provided the prisoner with a full and fair hearing on the claim. Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976). The state provided petitioner an opportunity to litigate his fourth amendment claim. The petitioner filed a motion to suppress which was denied after a hearing. Accordingly, petitioner's fourth ground for habeas relief will be denied.
In ground 5, petitioner alleges that the trial court erred in excluding members of petitioner's family, even though they were not witnesses at petitioner's trial. *987 Petitioner asserts that this erroneous exclusion created an impression in the minds of the jurors that petitioner had been abandoned by his family or was dangerous.
The exclusion of witnesses in Missouri courts is a matter within the sound discretion of the trial judge. State v. Daegele, 302 S.W.2d 20, 24 (Mo.1957). The Court notes that members of petitioner's family were endorsed as witnesses for the penalty phase of the trial and testified at that phase. Thus, the Court finds that the trial judge's exercise of discretion in excluding petitioner's family members did not render petitioner's trial fundamentally unfair.
In both grounds 6 and 20, petitioner alleges that the trial court erred in failing to exclude photographs depicting the bodies of the murder victims. Petitioner contends that these photographs inflamed the passions of the jury and caused petitioner to be convicted on an improper basis. Additionally, petitioner contends that the probative value of the photographs was greatly outweighed by their prejudicial effect.
Petitioner must demonstrate that the court's error in allowing the photographs was of such significance that the trial was fatally infected. See Redding v. Minnesota, 881 F.2d 575, 579 (8th Cir. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 1158, 107 L.Ed.2d 1061 (1990). Photographs generally are admissible if relevant to a material issue in the case. State v. Daugherty, 631 S.W.2d 637, 641 (Mo.1982).
The photographs admitted were relevant as to the issue of deliberation which the state was required to prove under the crimes charged in the indictment. The autopsy photographs also reveal the extent of the victims' wounds and were described by oral testimony. Thus, these photographs had substantial probative value and aided the jury in analyzing the evidence. Accordingly, the Court finds that the photographs did not fatally infect petitioner's trial.
Petitioner's next contention is that the trial court improperly permitted the state to bolster statements made by witnesses Claudia Hennings and Gladys Nutall. Officer Planthold testified as to statements made by Hennings. Nutall was allowed to testify that she was certain that petitioner had raped her.
Again, petitioner must demonstrate that the trial court's alleged error fatally infected his trial. Redding, 881 F.2d at 579.
Officer Planthold testified that Hennings told him that Hennings' friend had been raped, the location of the crime scene, and the names and descriptions of two of the assailants, including petitioner. This testimony was offered to explain the officer's actions in reporting to the scene of the crime. The officer did not testify as to details of the crime related to him by Hennings. The Court finds no error in allowing this testimony by Officer Planthold. Similarly, the Court does not find it improper to allow Nutall to testify as to her certainty of the identification of petitioner. Thus, the testimony of Officer Planthold did not fatally infect petitioner's trial.
Petitioner next objects to the definition of "reasonable doubt" and the explanation of the government's burden of proof given to the jury. The instruction given to the jury defining "reasonable doubt" is from MAI-CR2d 2.20 and reads in pertinent part as follows:
A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.
Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you will find him guilty. If you are not so convinced, you must give him the benefit of the doubt and find him not guilty.
Petitioner contends that this instruction fails to impart upon the jurors the full gravity of their duty. See In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Specifically, petitioner objects to *988 the language "firmly convinced" and "doubt based upon reason and common sense" contained in the instruction.
The Court notes that a similar instruction, using the language "firmly convinced," has been approved by the federal courts. See United States v. Hunt, 794 F.2d 1095, 1100-01 (5th Cir.1986). In addition, this Court regularly uses an instruction defining "reasonable doubt" as "doubt based on reason and common sense." See E. Devitt & C. Blackmar, Federal Jury Practice and Instructions, § 11.14 (2d ed. 1977). Accordingly, the Court concludes that the trial court stated the law accurately and petitioner's trial was not made fundamentally unfair.
Next, petitioner argues that the trial court improperly permitted the state to make an opening statement during the penalty phase of the trial when the state presented no evidence at this stage of the trial.
The trial court has broad discretion regarding the scope and manner of opening statements. Due to the bifurcated nature of the murder trial, the state had already presented evidence to the jury during the guilt phase of the trial. The prosecutor's opening statement during the penalty phase merely summarized for the jury the evidence it had already heard and how that evidence related to the penalty phase. To adopt the argument advanced by petitioner would result in much unnecessary repetition of testimony by the state's witnesses. The Court fails to see how allowing the state an opening argument at this stage of the trial rendered petitioner's trial fundamentally unfair.
Finally, petitioner contends that the trial court erred in refusing his request for a jury instruction on conventional second-degree murder. Petitioner alleges that this instruction was supported by the evidence and should have been given as a lesser included offense. The jury was instructed on felony murder. However, petitioner alleges that the evidence in the case did not compel an inference of deliberation and that a second-degree murder instruction also should have been given.
The trier of fact in a capital murder case must be allowed to consider lesser included offenses supported by the evidence. Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Respondent contends that a conventional second-degree murder instruction was not supported by the evidence.
With respect to this issue, the Supreme Court of Missouri found as follows:
In this case, the evidence was that after the [petitioner] and two accomplices robbed Jackson, Stewart, Claudia Hennings, and Gladys Nutall, they bound and gagged Jackson and Stewart, placed them on their knees, and then beat the two men while demanding more. Knives were repeatedly stabbed into the floor near the men to further frighten them. Then, after Hennings escaped out the window, Nutall saw the defendant hold Stewart up and shoot him in the back. When police arrived on the scene Jackson and Stewart were found dead of bullet wounds caused by bullets fired from the same weapon. At trial, the [petitioner's] only defense was that it was not him but rather one of his accomplices that shot the men. He did not try to prove that the murders did not take place or that they took place in a manner different from that testified to by Hennings and Nutall. He did not even deny his presence at the apartment. He tried only to throw doubt on the accuracy of Nutall's identification of him as the killer.
The [petitioner] contends that this evidence supports the submission of a second degree murder instruction because it permits a jury to find that the [petitioner] and his accomplices reacted to Hennings' escape with panic and shot Jackson and Stewart in reflex rather than after deliberation. There is no evidence to support this theory and it is belied by Nutall's testimony that the [petitioner] held Stewart up before shooting him in the back. Such testimony is consistent only with the killer holding Stewart steady while deliberately aiming his weapon for a death shot. Also, the evidence *989 that Jackson and Stewart had two bullet wounds each in their upper torsos is consistent with deliberately aimed shots and inconsistent with the conjecture and speculation that the shots were fired in panic. Further, there would have been no reason for the defendant and his accomplices to kill the victims in reflex to Hennings' escape. The victims were bound. They could have made no move to take advantage of the confusion caused by the escape by either attempting to escape themselves or to turn on their assailants.
State v. Murray, 744 S.W.2d at 773-74. This Court agrees with the Supreme Court's determination and finds that petitioner was not entitled to a second-degree murder instruction because it was not supported by the evidence.
In sum, after careful review, the Court finds that petitioner is not entitled to habeas corpus relief on any of his claims. Accordingly,
IT IS HEREBY ORDERED that petitioner's petition for writ of habeas corpus is denied.
IT IS HEREBY FURTHER ORDERED that any motions or requests for a hearing, to the extent they remain pending before this Court, are denied as moot.
IT IS HEREBY FURTHER ORDERED that petitioner's execution is stayed until sixty days from the date of this order.
NOTES
[1] Petitioner presents this claim in his federal habeas action as one of trial court error. However, this claim regarding the potential poisoning of the jury was presented to the state courts as an ineffective assistance of counsel claim. Accordingly, the Court will consider the claim only on the ineffective assistance of counsel basis. See Anderson v. Harless, 459 U.S. 4, 6-7, 103 S.Ct. 276, 277-78, 74 L.Ed.2d 3 (1982). Petitioner also orally argued this claim to the Court at the hearing.
[2] Once again, this claim is presented to this Court as a claim of trial court error, but was presented to the state courts as an ineffective assistance of counsel claim, and will be considered by this Court as an ineffectiveness claim. See Anderson v. Harless, 459 U.S. at 6-7, 103 S.Ct. at 277-78.